# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ABINGDON

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | ████████ | |
| | ) | | |
| INDIVIOR INC. (a/k/a Reckitt Benckiser | ) | **Case No. 1:19-cr-00016** | |
| Pharmaceuticals Inc.) and | ) | | |
| INDIVIOR PLC | ) | | |

## UNITED STATES' RESPONSE IN OPPOSITION
## TO MOTION TO DISMISS THE INDICTMENT

The United States of America ("United States") opposes the "Motion to Dismiss the Indictment for Alleging the Conviction of 'Doctor D' to Prove the Guilt of Indivior" (Doc. 81) ("Mot.") and Memorandum in Support (Doc. 82) ("Mem.") of Defendants Indivior Inc. (a/k/a Reckitt Benckiser Pharmaceuticals Inc.) and Indivior plc (collectively, "Indivior") as follows.

## **INTRODUCTION**

Indivior's argument is illogical, inaccurate, and contrary to law. As to logic, there is no reason to believe that the ten-word reference to Doctor D's conviction in a chart on the 34th page of the Indictment caused the grand jury to erroneously infer Indivior's participation in Doctor D's fraudulent scheme, and indict Indivior on that basis. *See* Indictment (Doc. 3) at p. 34, ¶ 143.[1] The plain meaning of the words, and their context within the Indictment, provide no grounds to suspect that the grand jury was confused or misled.

---

[1] Doctor D (████████) was convicted of health care fraud for billing an insurer for urine drug tests performed seven to ten months after they were collected and, thus, too old to be used to treat the patients at his opioid addiction/dependence clinic. If performed in a timely manner and used to guide treatment, such tests can be medically necessary to properly treat opioid addiction/dependence patients, including by monitoring them to ensure that they are not taking illicit drugs, and are taking (and not diverting) the drugs prescribed to them. *See United States v.* ████, 900 F.3d 743, 747-49 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 852 (U.S. Jan. 7, 2019).

Indivior's argument is demonstrably inaccurate because, out of an abundance of caution, to eliminate any supposed basis for even arguing confusion, the United States recently presented the grand jury with evidence regarding Doctor D's conviction, including testimony that, based on the United States' investigation in this case, Indivior did not participate in the urine testing scheme for which Doctor D was indicted and convicted.[2]  *See* ████████████████████ ████████████████████████████████████████████████.  After receiving this evidence, the grand jury returned a Superseding Indictment nearly identical to the original, thereby mooting Indivior's contention that the original Indictment was based on an erroneous inference that Indivior participated in the scheme for which Doctor D was convicted. *See* Superseding Indictment (Doc. 115).  In another measure to eliminate any basis for arguing confusion, the Superseding Indictment specifies that Doctor D's conviction related to urine testing, reading, "Doctor D indicted on 11/5/2015 for health care fraud related to urine testing; found guilty of 17 counts on 3/31/2017."  *See id.* at p. 34, ¶ 143.  ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[2] In its original presentment, the United States did not provide the grand jury with evidence regarding Doctor D's conviction, and some other facts regarding Doctor D.  In its superseding presentment, the United States provided the grand jury with such evidence, as well as testimony that, based on its investigation, Indivior did not participate in the urine testing scheme for which Doctor D was indicted and convicted.

██████████████████████████████████████████████

██████████████████████████

As to the law, there is no legal rule prohibiting the United States from informing a grand jury about prior criminal convictions of third parties, or even defendants themselves. Controlling precedent holds that the Federal Rules of Evidence do not apply to grand jury proceedings. Indivior misplaces its reliance on cases relating to the admission *at trial* of a co-conspirator's or co-defendant's conviction as establishing a defendant's guilt, but those cases are inapplicable. The trial has not occurred, Doctor D is not a co-defendant, and contrary to Indivior's assertion, there is no "implication" in the Indictment that "since Doctor D was guilty, Indivior must be guilty of the same offense." Mem. at 3. The opposite is true: neither the Indictment nor the Superseding Indictment nor any evidence has suggested that Doctor D's conviction is enough to convict Indivior, or that Indivior committed the same crime as Doctor D. Rather, Doctor D's conviction is some evidence that he and his clinic issued opioid prescriptions in a careless and clinically unwarranted manner, and Indivior knew this yet continued referring patients to him to obtain Suboxone Film sales, even after he was indicted and just months prior to his conviction.

Separately, the United States did not intend to, and did not, bias the grand jury by questioning witnesses who had invoked their Fifth Amendment rights against self-incrimination, and questioning other witnesses about the truthfulness of their testimony. The United States asked its questions for valid reasons. There is no basis to conclude that the questions biased the grand jury or prejudiced Indivior, especially given the abundance of evidence laid out in the Indictment. For all these reasons, Indivior's Motion should be denied.

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████

# ARGUMENT

**A.  The Indictment's Reference to Doctor D's Conviction Does Not Warrant Dismissal**

**1.  The Superseding Indictment Moots Indivior's Argument**

The Superseding Indictment disproves Indivior's argument and is sufficient to deny its Motion.  Indivior's argument is that the original Indictment "falsely alleged" that Doctor D's conviction "related to Indivior."  Mem. at 1.  For the reasons given below, this argument regarding the original Indictment is without merit.  However, out of an abundance of caution, the United States presented to the grand jury additional evidence and a Superseding Indictment that eliminate any argument about grand jury confusion regarding the relevancy of Doctor D's conviction.

In presenting the Superseding Indictment to the grand jury, the United States submitted evidence regarding Doctor D's conviction, which it did not submit in presenting the original Indictment.  This evidence included the indictment and judgment against Doctor D and an appellate court opinion describing and affirming his conviction.  *See*





Thereafter, the United States presented the Superseding Indictment, which contains the following narrative regarding Doctor D's indictment and conviction:

> Doctor D indicted on 11/5/2015 for health care fraud related to urine testing; found guilty of 17 counts on 3/31/2017

*See* Superseding Indictment (Doc. 115) at p. 34. The only other changes from the original Indictment were to the Notice of Forfeiture.

Though the original Indictment was not deficient, the Superseding Indictment addresses all of the supposed issues Indivior claimed to exist. In particular, Indivior alleges that the United States tacitly implied that Indivior participated in the scheme for which Doctor D's was convicted, Mem. at 1 (citing Indictment ¶¶ 128-42), but Indivior can no longer make such a claim. The Superseding Indictment clarifies that Doctor D's conviction related to "urine testing," and testimony explained that Indivior did not ████████████████████████████ *See* ████████████████████████.

## 2. The Indictment and Superseding Indictment Are Proper

It is axiomatic that "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enters., Inc.*, 498

U.S. 292, 300 (1991). Even if non-constitutional violations occur before a grand jury, the court

may dismiss an indictment "only if it is established that the violation substantially influenced the

grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from

the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S.

250, 256 (1988) (internal quotations omitted).

Indivior argues that three other supposedly "well-settled principles compel dismissal of

this Indictment," namely, that the government cannot (1) supply a grand jury with evidence of a

conviction, (2) misstate the law to a grand jury, and (3) present false evidence to a grand jury.

Mem. at 2-3. As explained below, the original Indictment did not, and the Superseding

Indictment does not, violate any applicable principles.

### a. Informing a Grand Jury of a Conviction Is Not Improper

Indivior's first cited principle for seeking dismissal is that the grand jury allegedly was

presented with "inadmissible evidence" of Doctor D's conviction. Mem. at 3. Indivior's

argument relies entirely on conflating grand jury proceedings and trials.

Federal courts have consistently held that informing a grand jury of a conviction is

neither improper nor indicative of prosecutorial misconduct, especially given that the Federal

Rules of Evidence do not apply to grand jury proceedings, and the function of a grand jury (as

distinct from a petit jury) is merely to assess probable cause for further proceedings, not guilt.

The Federal Rules of Evidence, which limit the use of convictions, do not apply to grand jury

proceedings. *United States v. Levine*, 700 F.2d 1176, 1179 (8th Cir. 1983) (the rules of evidence

"are not applicable to federal grand jury proceedings" and "we find no misconduct in informing

the grand jury of prior convictions"); *see also United States v. Costello*, 350 U.S. 359, 363

(1956) (a grand jury can act solely on testimony which at trial would be incompetent evidence,

such as hearsay); *United States v. Calandra*, 414 U.S. 338, 343 (1974) (even the exclusionary rule of evidence obtained through unlawful search and seizure is not applicable to grand jury proceedings); Fed. R. Evid. 1101(d)(2) (Federal Rules of Evidence expressly provide they do not apply to grand jury proceedings).

*Levine* illustrates the pertinent rule. There, in testimony before a grand jury, a postal inspector responded to a grand juror's question by informing the grand jury of the defendant's prior convictions related to mail theft (the same crime the grand jury was investigating), describing the prior convictions slightly inaccurately, and adding that the defendant had declined to speak with investigators. The Eighth Circuit held, "[i]n the spirit of the Supreme Court decisions and our prior decisions, we find no misconduct in informing the grand jury of prior convictions or of the [defendant's] refusal to talk to law enforcement officers. . . ." The court continued, "absent some evidence of gross purposeful deception by the prosecutor, an indictment legally valid on its face will not be overturned because it is possible that some of the evidence presented to the grand jury may have permitted an erroneous adverse inference." 700 F.2d at 1179. The court concluded that "there was no impropriety in telling the grand jury of the prior convictions or of [the defendant's] refusal to talk to the law enforcement officers in that grand juries are not bound by the rules of evidence." *Id.* at 1181.

Similarly, in *United States v. Godwin,* No. 5:15-cr-115, 2016 WL 6238521, at *4, 2016 U.S. Dist. LEXIS 147379, at *10-11 (E.D.N.C. Oct. 25, 2016), the court held that the United States' presentation of evidence regarding the defendants' prior felony convictions was not misconduct, and denied their motion to dismiss the indictment. The court stated that "[g]rand juries may consider information from a broad range of sources, unbound by the Federal Rules of Evidence," and continued, "[c]ourts may not dismiss a facially valid indictment merely because

there was inadequate or incompetent evidence before the grand jury." *Id*. (quotations omitted).

Likewise, in *United States v. Mussmacher*, No. 09-cr-0169, 2010 U.S. Dist. LEXIS 55011, at

*24 (D. Md. June 3, 2010), the court held that informing the grand jury of the defendant's prior

conviction was not "improper conduct by the prosecutors."  District courts outside the Fourth

Circuit have also applied this rule.  *See, e.g., United States v. Hill*, No. 3:09-cr-59, 2010 U.S.

Dist. LEXIS 118555, at *5-6 (W.D. Ky. Nov. 4, 2010) (holding that informing the grand jury of

the defendant's prior conviction was not misconduct because the Federal Rules of Evidence do

not apply to grand jury proceedings and, under Sixth Circuit precedent, it "is enough that there is

*some* competent evidence to sustain the charge issued by the Grand Jury even though other

evidence before it is incompetent or irrelevant in an evidentiary sense or even false") (emphasis

in original); *United States v. Galindo*, No. 04-cr-0532008, 2008 U.S. Dist. LEXIS 27741, at *14

(D. Haw. April 4, 2008) (holding that "there was *nothing improper* about the AUSA informing

the grand juries of Defendant's felony criminal history") (emphasis added).

The United States has searched for, but not found, any precedent supporting Indivior's

argument that informing a grand jury of a conviction (much less the conviction of someone who

is not even a defendant) is prosecutorial misconduct.  The cases Indivior cites in this section of

its Memorandum do not support its contention.  *United States v. Mitchell*, 1 F.3d 235 (4th Cir.

1993), cited in Indivior's Mem. at 7, concerned the repeated improper use of a conviction *at

trial*.  The Fourth Circuit remanded the case for a new trial; it did not dismiss the indictment or

even discuss grand jury proceedings.  *United States v. Blevins*, 960 F.2d 1252 (4th Cir. 1992),

cited in Indivior's Mem. at 2, 8-9, also concerned the use of convictions *at trial*.  The Fourth

Circuit found that any error was harmless, and affirmed the convictions.  Neither of these cases

concerns informing a grand jury of a conviction, and neither resulted in the dismissal of an

indictment.  In light of applicable case law, the Indictment's reference to Doctor D's conviction was not improper.

### b.    Indivior's "Legal Instruction" Argument Fails

Indivior's second cited principle is that "where a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction."  Mem. at 2 (citing *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011)).  As Indivior does not have access to the legal instructions provided to the grand jury, it advances a novel argument that the grand jury was "effectively instructed" via the supposedly "inadmissible evidence" of Doctor D's conviction.[4]  Mem. at 3.  This argument has no factual or legal support: it is refuted by the Superseding Indictment, which the grand jury returned after receiving evidence that Indivior did not participate in Doctor D's scheme, and as explained above, mentioning the conviction to the grand jury was not improper.  Moreover, as explained in the next section, the statement about Doctor D's conviction was neither false nor misleading.  Finally, the case on which Indivior relies is inapplicable, relating to a prosecutor's erroneous legal instruction to a grand jury regarding the advice-of-counsel defense, not evidence.  *United States v. Stevens*, 771 F. Supp. 2d 556, 564-68 (D. Md. 2011).  In *Stevens*, the court dismissed the indictment without prejudice, allowing the prosecutor to correct

---

[4]  In all likelihood, Indivior advances this obviously meritless argument as a tactic to pierce the secrecy afforded to the proceedings of a grand jury.  However, "a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment."  *United States v. Loc Tien Nguyen*, 314 F.Supp.2d 612, 616 (E.D. Va. 2004) (internal quotations omitted).  This burden cannot "be satisfied with conclusory or speculative allegations of misconduct."  *Id.* (internal quotations omitted).

the mistaken legal instruction. *Id.* at 568 (finding that "dismissal with prejudice is wholly

inappropriate"). It did not address whether evidence can effectively be a legal instruction.

<h3 style="text-align:center">c.      The Mention of Doctor D's Conviction Is Not Misleading</h3>

Indivior's third point is that a "false and misleading allegation [was] presented to the

grand jury." Mem. at 11. This is not true. Doctor D's conviction is real, and has been affirmed

by the Sixth Circuit. *See Bertram*, 900 F.3d 743. Accordingly, there is no debate that, in fact,

"Doctor D [was] convicted of 17 counts of health care fraud," as alleged in the original

Indictment. *See* Indictment (Doc. 3) at p. 34, ¶ 143. Indivior's brief seems to concede this.

Mem. at 11-13.

The Indictment's reference to Doctor D's conviction also was not misleading. The

Indictment alleged, and the Superseding Indictment alleges, that Indivior promoted Suboxone

Film by several fraudulent means. The section at issue concerns one of those means: Indivior's

marketing of Suboxone Film, and referrals of patients, to health care providers it "knew were

prescribing buprenorphine-containing drugs [including Suboxone] to more patients at a time than

allowed by federal law (*i.e.*, the DATA), at daily doses higher than 24 mgs of buprenorphine

(*i.e.*, in excess of the maximum dose of any demonstrated additional clinical advantage), and in a

careless and clinically unwarranted manner." *See* Indictment (Doc. 3) and Superseding

Indictment (Doc. 115) at pp. 26-34, ¶¶ 97, 128. This section contains three charts offering

particulars of Indivior's acts and knowledge with regard to four particular providers. *See*

Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at pp. 26-34, ¶¶ 97-143.

Doctor D's conviction is alleged at the end of the final chart. The purpose of the

allegation, and the chart as a whole, is clearly to offer particulars of Indivior's efforts to switch

Doctor D "to Suboxone Film where Doctor D exceeded the maximum number of patients

allowed at a time, where daily doses exceeded the maximum indicated for additional clinical advantage, and where prescriptions were issued in a careless and clinically unwarranted manner." *See* Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at p. 31, ¶ 128. The chart shows that Indivior, through its "Here to Help" program, continued referring patients to Doctor D even after he was subject to a "state board investigation" in 2008, *see* Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at p. 32, ¶ 131, and suspended from prescribing buprenorphine-containing drugs for opioid addiction/dependence treatment in 2012, *see* Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at p. 34, ¶ 141.[5] The final entry in the chart accurately notes Doctor D's conviction, to close the loop on his interactions with regulatory and law enforcement authorities, and to show Indivior referred patients to him just months before his conviction in March 2017. *See* Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at p. 34, ¶ 143. The preceding paragraph in the chart shows Indivior's "Here to Help" program referred patients to Doctor D through December 2, 2016. *See* Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at p. 34, ¶ 142.

The structure of the chart referencing Doctor D's conviction promotes clarity, and discourages conflation or misattribution. It is written in plain English. It does not conflate Indivior with the health care providers; on the contrary, it contains a column labeled "Personnel" devoted exclusively to attributing each particular act to an actor, *i.e.*, specifying who did what. *See* Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at pp. 26-34, ¶¶ 97-143. This

---

[5] *See* Agreed Order of Indefinite Restriction filed by ▮▮▮▮▮ in *United States v.* ▮▮▮▮▮, *M.D. et al.*, 3:15-cr-00014 (E.D. Ky.) (Doc. 187-5). This Agreed Order of Indefinite Restriction discusses several reviews conducted between 2008 and 2012 concerning Doctor D's failure to adhere to acceptable standards for prescribing Suboxone, including his failure to conduct and review drug screens, which can help determine whether patients are using illicit drugs and whether patients are taking (or possibly diverting) the drugs prescribed to them.

context naturally leads the reader to interpret Doctor D's conviction as a particular, not an implication that Indivior participated in Doctor D's scheme.

The case Indivior cites in support of its argument is not on-point with the issue Indivior has raised. In *United States v. Feurtado*, 191 F.3d 420, 423-25 (4th Cir. 1999), in testimony before a grand jury, a state law enforcement agent "connected [the] defendants to a series of New York homicides, including the killing of a police officer," when in fact there was no connection. The district court found there was "no evidence of willful prosecutorial misconduct," but dismissed the indictment without prejudice, based on "some doubt" that the testimony influenced the grand jury. *Id.* The United States presented a superseding indictment, the defendants were convicted at trial, and the Fourth Circuit affirmed the convictions, finding the district court's handling of the situation was not erroneous, or alternatively, any error was harmless. *Id.* The issue Indivior has raised is not analogous to inaccurately attributing homicides to a defendant.

### d. The United States Acted Fairly and in Good Faith



[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Further, Indivior's current argument that "Doctor D's prosecution had nothing to do with his allegedly improper prescription of Suboxone," Mem. at 13, [REDACTED] [REDACTED] It also does not square with the record in the criminal case against Doctor D, which includes testimony that Doctor D's clinics treated patients with buprenorphine drugs, including Suboxone, and evidence that the urine samples that were tested more than six months after they were collected from patients were from the substance abuse treatment centers that Doctor D owned and that treated opioid addicted/dependent patients with buprenorphine drugs, including Suboxone. Importantly, it was also Doctor D who directed that the samples be frozen and sent to his laboratory even though he knew that his laboratory did not have the equipment to conduct the tests in a timely manner, *i.e.*, before the patients' next visit so that it could be determined if the patients were actually taking (rather than diverting) their Suboxone and/or using any illicit drugs. The evidence from Doctor D's trial is summarized at pages three to 19 of the United States' appellee brief filed in the Sixth Circuit, a copy of which is attached hereto as Exhibit 4.

In sum, [REDACTED]

[REDACTED]

[REDACTED] Out of an abundance of caution, to avoid further unnecessary

litigation, the United States revised the Superseding Indictment ███████████
███████████ .

### 3.     Indivior Has Not Shown Prejudice

An indictment may not be dismissed for prosecutorial misconduct absent a showing that the misconduct prejudiced the defendant. *United States v. Derrick,* 163 F.3d 799, 807 (4th Cir. 1998) (citing *Bank of Nova Scotia*, 487 U.S. 250, and *United States v. Hasting*, 461 U.S. 499 (1983)). Prejudice may be established by proof that the grand jury's decision to indict was substantially influenced, or that there is grave doubt that the decision to indict was substantially influenced, by the prosecutorial misconduct. *Bank of Nova Scotia*, 487 U.S. at 256. But prejudice alone is not enough to dismiss an indictment. The prejudice must affect substantial rights *and* there must be no other appropriate remedy. *United States v. Bowles*, No. 7:17-cr-772019, 2019 WL 346422 at *3, 2019 U.S. Dist. LEXIS 13466, at *9 (W.D. Va. Jan. 28, 2019).

Dismissing the Indictment based on the matters Indivior has raised would be inconsistent with controlling Supreme Court and Fourth Circuit precedents. No prong of the test for dismissal is satisfied. Tellingly, Indivior has not even attempted to argue that the Indictment does not present a case against it, or that the other facts alleged in the Indictment, as well as the plethora of evidence presented to the grand jury, was insufficient for the grand jury to find probable cause. Moreover, Indivior does not object to other allegations that have the same relevance as Doctor D's conviction, such as that Doctor D was indefinitely restricted from prescribing Suboxone for use in opioid addiction/dependence treatment. *See* Indictment (Doc. 3) and Superseding Indictment (Doc. 115) at p. 34, ¶ 141. Indivior appears to agree with the veracity of this poignant fact and does not object to it, further demonstrating that Indivior was not prejudiced.

### 4. Indictments Cannot Be Dismissed for Incompetent or Insufficient Evidence

Even if Indivior were correct that there should have been additional information provided about Doctor D's conviction in presenting the original Indictment to the grand jury, the inadvertent failure to do so is not grounds to dismiss the Indictment. In *United States v. Mills*, 995 F.2d 480 (4th Cir. 1993), *cert. denied*, 510 U.S. 904 (1993), the Fourth Circuit explained the applicable legal rule as follows:

> [T]he Supreme Court's holdings under the Fifth Amendment's Indictment Clause teach that courts lack authority to review either the competency or sufficiency of evidence which forms the basis of an indictment and may not quash indictments when the errors which produce them, such as prosecutorial misconduct or violation of a statute, do not affect substantial rights. . . . The *Costello* holding prohibits courts from reviewing the substance of evidence which produces an indictment, and the *Nova Scotia* ruling prevents dismissal of an indictment tainted by procedural defects which only amount to harmless error.

*Id.* at 487 (internal citations omitted).

The facts of *Mills* are instructive. There, the Fourth Circuit confronted "an odd predicament." The case concerned a conspiracy to distribute cocaine. The only evidence the United States provided to the grand jury to show that Mills participated in the conspiracy was the mistaken testimony of a DEA agent, who confused Mills with another person named Brincefield. As a result, the grand jury never received any evidence regarding Mills. *Id.* at 487-88.

After he was convicted at trial, Mills moved to dismiss the indictment, claiming he was deprived of his Fifth Amendment rights to due process and grand jury indictment because the United States had not provided the grand jury with any evidence regarding him. The Fourth Circuit disagreed, citing *Costello*, 350 U.S. at 363, for the rules that courts may not "look behind" an indictment and defendants may not challenge an indictment for lack of evidence, and *Bank of Nova Scotia v. United States*, 487 U.S. at 254, for the proposition that courts may not

dismiss an indictment absent prejudice to the defendant. The Fourth Circuit held Mills was not prejudiced because a petit jury subsequently found him guilty, thereby establishing probable cause had existed to indict him. However, the Fourth Circuit went on to explain that,

> prior to submitting the case to the petit jury, the inquiry is admittedly less certain, but by no means unmanageable. When reviewing the evidence prior to a verdict, the court need not decide with certainty whether the accused is guilty or innocent. The court need only concern itself with whether a reasonable grand jury could have concluded a crime had been committed by the accused based on the evidence before it. Certainty is not the standard, only probable cause must be findable by a reasonable set of grand jurors.

*Id.* at 489.

Accordingly, even in the absence of any Superseding Indictment, the original Indictment could not have been dismissed due to a failure to supply the grand jury with evidence regarding Doctor D's conviction. Importantly, in *Mills*, the United States mistakenly failed to supply the grand jury with *any* evidence supporting the indictment; by contrast, here, the United States supplied the grand jury with voluminous other evidence. In any event, because the grand jury has returned the Superseding Indictment, this issue is now moot.

**B.      Indivior Provides No Reason to Grant Access to the Entire Grand Jury Record**

Indivior argues that it should be granted access to the entire grand jury record. Its argument is based primarily on claims about prosecutors' handling of witness who invoked the Fifth Amendment. Mem. at 16-26. Indivior's argument has no merit and Indivior's request for the grand jury record should be denied. "[T]he desire to investigate whether any grand jury impropriety has occurred is insufficient to rebut the strong presumption of regularity in grand jury proceedings. A contrary rule would eviscerate the shield of secrecy protecting grand juries . . . ." *Loc Tien Nguyen*, 314 F.Supp.2d at 617. Where, as here, "a defendant proffers no evidence

or basis to believe that any grand jury irregularity or impropriety exists, disclosure of grand jury matters is wholly unwarranted." *Id.*

1. **The Questioning of Witnesses Who Invoked the Fifth Amendment Was Appropriate and Did Not Prejudice Indivior**

The United States is not required to stop questioning witnesses once they invoke the Fifth Amendment in response to a particular question, but may ask additional questions when there is a valid reason to determine the scope of the right being invoked.[6] For example, it is perfectly acceptable to continue questioning a witness to determine whether he or she is invoking the Fifth Amendment selectively or whether the witness will invoke it no matter what is asked, *e.g.*, by asking whether the sky is blue. Indeed, in *United States v. Shuck*, 895 F.2d 962 (4th Cir. 1990), the case on which Indivior relies, *see* Mem. at 21, the Fourth Circuit held that a prosecutor's questions concerning the scope of the Fifth Amendment right invoked by the witness did not undermine the fundamental fairness of the grand jury proceeding. *See also United States v. Kennedy*, 372 F.3d 686, 697 (4th Cir. 2004), *cert. denied*, 543 U.S. 1123 (2005) (explaining that, in *Shuck*, the Fourth Circuit found the prosecutor committed no misconduct "by badgering the witness with repeated questions about the subject for which the [Fifth Amendment] privilege was invoked").

---

[6] Indivior incorrectly cites *Bank of Nova Scotia* for the argument that the United States must immediately cease all questioning of a witness once the witness invokes his or her Fifth Amendment privilege in response to a particular question. Mem. at 20-21. The Supreme Court, however, has never established such a rule. In *Bank of Nova Scotia*, the Court simply described the circumstances supporting its rejection of the district court's conclusion that the government committed a constitutional error in calling witnesses before the grand jury who previously warned the government that they would not testify. The Fourth Circuit and this Court also have never established such a rule. *Cf. In re Grand Jury Subpoena to Doe*, 41 F. Supp. 2d 616, 621 (W.D. Va. 1999) (where this Court quoted the prosecutor asking seven questions to which the witness invoked the Fifth Amendment concerning his involvement in an undercover narcotics operation).

In *Shuck*, the prosecutor questioned the defendant about his invocation of the Fifth Amendment privilege in response to certain questions about another person, the defendant consulted with his attorney, and he then answered the questions about that other person. However, his responses were false and he was tried and convicted for perjury. The Fourth Circuit found that the prosecutor's questioning of the defendant about the scope of the privilege he was asserting "did not undermine the fundamental fairness of the grand jury proceeding." 895 F.2d at 966-67. Furthermore, there was no prejudice because the prosecutor had not tricked or coerced the defendant to commit perjury, and the defendant relied on his counsel concerning when to answer a question and when to remain silent. *Id.*

In this case, there is no allegation of any violation of any grand jury witness's Fifth Amendment right against self-incrimination. No witness made any court filing objecting to the United States' questioning. Based on the lack of any Fifth Amendment violation as to any witness's right not to incriminate him or herself, the Court should reject Indivior's argument. The inquiry should end here.

However, for the record, the United States will address Indivior's meritless criticisms regarding its questioning of witnesses who invoked the Fifth Amendment. The United States' questions focused on determining the scope of the witnesses' invocation of the privilege, because the witnesses themselves sometimes did not make that clear, and the questions were meant to establish that the invocation of the privilege was overly broad, since such a record could be required to challenge an overly broad assertion in court, if needed.[7]

---

[7] Questions were also asked to Indivior employees who invoked the Fifth Amendment to make a record showing that the United States could not obtain testimony about certain issues. The government was having difficulties obtaining documents from Indivior about these issues. ███████

Indivior's first criticism is that the United States "required" five witnesses to invoke the Fifth Amendment seven to nine times and sought to establish the overly broad assertion of the privilege by three witnesses by asking them some version of, "If I asked you whether the sky is blue, would you take the Fifth Amendment in response to that question?" Mem. at 21. However, the United States was entitled to ascertain the scope of each witness's Fifth Amendment assertion. ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ With respect to the other witnesses, the United States asked additional questions to clarify the scope of privilege being invoked. For example:

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

---

████████████████████████████████████████████████████████ The United States was entitled to argue that it needed the documents because it could not obtain relevant evidence from Indivior employees due to their invocation of the Fifth Amendment.

████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████████████

█████████████████████████████████

████████████████████████████████

█████████████████████████████

████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

████████████████████████████████

██████████████████████████████

███████████████

For three other witnesses, the United States was simply seeking to establish the scope of

the privilege assertion and also establishing that their assertion of the privilege was overly broad,

so it would have a clear record to challenge the assertion in court, if needed.  For example:







Indivior next accuses the United States of "harassing" witnesses "in many other instances" by extensively further questioning them after they asserted the Fifth.  Mem. at 21-22.  Indivior provides cites to the testimony of five witnesses (Mem. at 22 n.8), but only discusses the questioning of two of them: ████████████████████████████████.  The questions posed to these witnesses were, however, appropriate.

████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

Indivior also criticizes the government's questioning of ████████████████

████████████████████████ as eliciting too many invocations of the Fifth, but does not further

explain what was inappropriate about the government's questioning.  This is because the

criticism is meritless.  For example:

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████



There is no basis to conclude that the United States' questions prejudiced Indivior. Indivior cites *United States v. Lawson*, 502 F.Supp. 158, 162 (D. Md. 1980) in this section of its brief, but there the court found that a prosecutor made a "deliberate effort to place false and misleading evidence before the grand jury," and the court still did not dismiss the indictment with prejudice, *id.* at 172-73. Here, the United States merely asked questions, based on legitimate strategic considerations.

Indivior also cites *United States v, Johnson*, 587 F.3d 625 (4th Cir. 2009), *cert. denied*, 559 U.S. 1082 (2010), to argue that by asking certain questions to some Indivior employees who invoked the Fifth Amendment, the United States "encouraged" the grand jury to make impressible inferences about Indivior's "guilt." Mem. at 20. *Johnson*, however, concerned a

trial, not grand jury proceedings.  The Fourth Circuit explained that the only bases for declaring a mistrial would have been if the government had made "'a conscious and flagrant attempt to build its case out of inferences arising from the use of the [trial witness's] testimonial privilege'" or if the "'inferences from [the trial] witness's refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination'."   587 F.3d at 631 (quoting *Namet v. United States*, 373 U.S. 179, 186-87 (1963)).  The Fourth Circuit concluded that the government's questions did not support either basis for a mistrial.

Even if *Johnson* applied to a probable cause determination by a grand jury (which it does not), it does not support Indivior's argument.  The government did not build probable cause out of improper inferences.  Rather, there was ample other evidence in the grand jury record to support the Indictment and Superseding Indictment, and no reason to believe that any purported improper inference added critical weight to the evidence presented in a form not subject to cross-examination by Indivior at the yet-to-be-held trial in this case.

## 2.    Seeking Truthful Testimony from Witnesses Is Not Improper

It is not improper to seek truthful testimony from grand jury witnesses.  Indivior's specific criticism about the United States' attempt to obtain truthful testimony from witnesses before the grand jury is unfounded.  For instance, ███████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████ Indivior's condemnation of the United States' handling of this situation, and others like it which unfolded in connection with Indivior employees, is misguided.

To give another example, ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████

### 3. Indivior's "Recidivism" Claim Is Frivolous

Indivior's accusation that a member of the prosecution team is a "recidivist" with regard to prosecutorial misconduct, based on a 21 year-old unpublished Fourth Circuit opinion that referred to some questions he asked during grand jury proceedings as being "improper" but not prejudicial, and a five year-old decision of this Court that a point he made during a rebuttal argument at trial was improper but cured by an instruction, is frivolous. The former case concerned the use of grand jury transcripts and recordings at trial. The Fourth Circuit rejected the contention they were improperly admitted in a single paragraph.

> Although the statements and others of like import were improper, we cannot conclude that the defendants were prejudiced by their introduction. The district court instructed the jury that the questions and comments by the Assistant U.S. Attorney were not evidence and were not to be considered as such. We presume that the jury followed this instruction.

*Group One United States v. Justus*, No. 97-4414, 1998 U.S. App. LEXIS 38806, at *25 (4th Cir. 1998). The latter case concerned a rebuttal argument at trial, to the effect that the defendant's attorney knew the defendant was guilty. The Court found the argument was improper but cured by an instruction, no prejudice resulted, and "evidence of the defendant's guilt was overwhelming." *United States v. Stumbo*, No. 1:14-cr-00014, 2014 U.S. Dist. LEXIS 127276, at *5-12 (W.D. Va. Sep. 11, 2014). These two incidents, 16 years apart and looking back 21 years into the career of a trial lawyer, cannot seriously be characterized as recidivist prosecutorial misconduct, especially considering that, over the last 27 years, this government attorney has questioned hundreds of witnesses in grand jury proceedings and tried numerous criminal cases before this Court.

## CONCLUSION

For all of these reasons, Indivior's Motion (Doc. 81) should be denied in its entirety.

Respectfully submitted,

DANIEL P. BUBAR
First Assistant United States Attorney
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

/s/ Albert P. Mayer, VSB No. 86024
Randy Ramseyer
Kristin L. Gray
Joseph S. Hall
Garth W. Huston
Janine M. Myatt
Carol L. Wallack
United States Attorney's Office
180 West Main Street
Abingdon, VA 24210
Tel:      (276) 628-4161
Fax:      (276) 628-7399
Email:  albert.p.mayer@usdoj.gov


DAVID MORRELL
Deputy Assistant Attorney General

Gustav W. Eyler
Jill P. Furman
Matthew J. Lash
Charles J. Biro
United States Department of Justice
Civil Division, Consumer Protection Branch
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
Tel:      202-307-0089
Email:  charles.biro@usdoj.gov

*Counsel for the United States of America*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on August 22, 2019, I electronically filed the foregoing redacted version of the United States' Response in Opposition to Motion to Dismiss the Indictment with the Clerk of Court via the CM/ECF system, which will send notification of the filing to all counsel of record in this matter.

/s/ Albert P. Mayer, VSB No. 86024