# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:19CR00016 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | **DENYING MOTION TO** |
| | ) | **DISMISS** |
| | ) | |
| **INDIVIOR INC., ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*ARGUED: Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; Peter J. Romatowski, JONES DAY, Washington, D.C., for Defendants. ON BRIEF: Daniel P. Bubar, First Assistant United States Attorney, Albert P. Mayer, Kristin L. Gray, Joseph S. Hall, Garth W. Huston, Janine M. Myatt, Carol L. Wallack, UNITED STATES ATTORNEY'S OFFICE, David Morrell, Deputy Assistant Attorney General, Gustav W. Eyler, Jill P. Furman, Matthew J. Lash, Charles J. Biro, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, CONSUMER PROTECTION BRANCH, for United States; Thomas J. Bondurant, Jr., and Jennifer S. DeGraw, GENTRY LOCKE, James M. Gross, James P. Loonam, and James R. Wooley, JONES DAY, for Defendants.*
.

The defendants, Indivior Inc. and Indivior PLC, are charged in a twenty-eight count Superseding Indictment with fraud offenses stemming from the development and marketing of the prescription medication Suboxone® (buprenorphine and naloxone) sublingual film ("Suboxone Film"). In their present motion, the defendants have moved to dismiss the charges on the ground of alleged government

misconduct before the grand jury. In addition, the defendants have requested additional disclosures of grand jury material in order to provide added support for their assertion that the dismissal must be with prejudice as willful misconduct. For the following reasons, I will deny the defendants' Motion to Dismiss and deny their request for disclosure of additional grand jury material.

## I.

Indivior Inc. is a U.S. pharmaceutical company and Indivior PLC is a U.K. pharmaceutical company that has owned Indivior Inc. since December 23, 2014.[1] Suboxone Film is a drug used in the treatment of opioid addiction and dependence, and it is sold throughout the United States. Overall, the government alleges that the defendants deceived health care providers and benefit programs into believing that Suboxone Film is safer and less susceptible to diversion and abuse than other similar drugs. The government charges that the defendants' fraudulent scheme hindered accurate assessments regarding opioid-addiction treatment in order to increase the defendants' profits and reduce competition from generic brands.

The defendants were originally charged in an April 9, 2019, Indictment, and the government later obtained the nearly identical August 14, 2019, Superseding Indictment. The government has charged the defendants with: (1) one count of

---

[1] Indivior Inc. was previously owned by a separate U.K. company before the two companies "demerged" on December 23, 2014, and Indivior PLC then took ownership.

conspiracy to commit mail, wire, and healthcare fraud, all in violation of 18 U.S.C. § 1349; (2) one count of healthcare fraud, in violation of 18 U.S.C. §§ 2 and 1347; (3) four counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341; and (4) twenty-two counts of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343.

According to the government, the defendants knew that specific physicians were prescribing buprenorphine in a careless and clinically unwarranted manner, but the defendants nonetheless continued to refer prospective patients to these physicians through the "Here to Help" program. Superseding Indictment ¶¶ 97–143, ECF No. 115. The Superseding Indictment refers to these physicians as Doctors "A," "B," "C," and "D". The Superseding Indictment alleges interactions between the defendants and these physicians that include communications about making a switch to Suboxone Film, as well as referrals of prospective patients to the physicians through the defendants' "Here to Help" program. As pertinent to the present motion, both the initial Indictment and the Superseding Indictment refer to Doctor D's healthcare fraud convictions in the United States District Court for the Eastern District of Kentucky.

The principal difference between the initial Indictment and the Superseding Indictment is additional language about the circumstances of Doctor D's

convictions.[2]  In the original Indictment, the grand jury alleges that Doctor D was convicted of seventeen healthcare fraud violations in the Eastern District of Kentucky but provided no other context.  The Superseding Indictment includes additional information about the convictions, specifically that the fraud was related to urine testing.[3]  The government claims that the change was intended to clarify the context of Doctor D's separate criminal conduct, and that the convictions were included to demonstrate that the defendants continued to refer patients to Doctor D even after receiving notice that Doctor D practiced medicine in a careless manner.

## II.

The defendants' Motion to Dismiss, filed prior to the return of the Superseding Indictment,  is based on two separate but related arguments.  First, the defendants assert that the allegation in the initial Indictment of an unindicted individual's separate healthcare fraud convictions — Doctor D's convictions in the Eastern District of Kentucky — resulted from false and improper evidence presented to the

---

[2]  The initial Indictment stated that on March 31, 2017, in the United States District Court for the Eastern District of Kentucky, "Doctor D convicted of 17 counts of health care fraud[.]"  Indictment 34, ECF No. 3.  The Superseding Indictment replaced the quoted language with "Doctor D indicted on 11/5/2015 for health care fraud related to urine testing; found guilty of 17 counts on 3/31/2017[.]"  Superseding Indictment  34, ECF No. 115.

[3]  Health care providers conduct urine tests to ensure that the patients are using the controlled substances they are prescribed rather than diverting them to others not under medical supervision.  It appears that Doctor D was in fact convicted of submitting claims for insurance reimbursement by a testing laboratory co-owned by him that were alleged to be medically unnecessary.  Defs.' Mem. Supp. Mot. Dismiss 11–13, ECF No. 82.

- 4 -

grand jury since it indicated by implication that the convictions were related to Suboxone Film. Defs.' Mem. Supp. Mot. Dismiss 11–16, ECF No. 82. The defendants also claim that all charges must be dismissed because these factual paragraphs were realleged by reference in each count of the Indictment. *Id.* at 10. The government admitted in its response that it had failed to introduce evidence relating to Doctor D's healthcare fraud convictions in the original Indictment, but that it had returned to the same grand jury to present the mistakenly omitted information and provide the additional information for the Superseding Indictment. United States' Resp. Opp'n Mot. to Dismiss 2 n.2, ECF No. 127.

Upon the government's admission and the return of the Superseding Indictment, the defendants' argument has morphed into a claim that the failure to present evidence of Doctor D's role as a physician who operated in a careless manner, while still including the information in the original Indictment, strongly implies government misconduct that warrants further investigation into the sufficiency of the evidence presented to the grand jury. The defendants further contended in oral argument that introducing the information before the same grand jury considering the Superseding Indictment, as well as clarifying the nature of Doctor D's convictions to address the defendants' concerns, did not cure the purported prior misconduct.

The defendants argue that the above-alleged misconduct was not the only wrongdoing that occurred before the grand jury, and that a review of the grand jury transcripts is necessary to determine whether the Superseding Indictment should be dismissed with prejudice. Defs.' Mem. Supp. Mot. Dismiss 16, ECF No. 82; Defs.' Reply Mem. 16–17, ECF No. 138. For example, the defendants point to asserted Fifth Amendment abuses contained in disclosed grand jury transcripts that they claim substantially prejudiced the grand jury against them. The defendants also assume that the government incorrectly instructed the grand jury on the law and made improper characterizations of evidence during the colloquy. Finally, the defendants proclaim that, regardless of whether the court permits further release of the grand jury transcripts, the government's alleged misconduct before the grand jury already constitutes prosecutorial misconduct that requires dismissal with prejudice.

## III.

As a general matter, judicial review of grand jury proceedings is extremely limited. *See United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (adopting the view that grand jury proceedings are cloaked in a presumption of regularity).[4] The grand jury is traditionally considered an independent body that is unrestricted

---

[4] I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

by the technical rules of evidence and procedure. *United States v. Calandra*, 414 U.S. 338, 344–45 (1974) ("The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered."). Nevertheless, courts have dismissed indictments based on extreme and aggravated grand jury misconduct, either on due process grounds or as an exercise of their supervisory powers. *See, e.g.*, *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977) (holding that courts should dismiss an indictment only in a flagrant case of knowing use of perjury relating to a material matter). *But see United States v. Lee*, 906 F.2d 117, 120 (4th Cir. 1990) (per curiam) ("[A]s the Supreme Court has explained, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.").

The defendants have the burden to defeat the presumption of regularity that attaches to grand jury proceedings as a matter of law. *R. Enters.*, 498 U.S. at 301. In order to defeat this presumption, the defendants must prove that (1) the violation constituted grave misconduct that "substantially influenced the grand jury's decision to indict" or creates "grave doubt that the decision to indict was free from the substantial influence of such violations," and (2) the defendant was actually prejudiced. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (first

prong); *United States v. Feurtado*, 191 F.3d 420, 424–425 (4th Cir. 1999) (first and second prong).

Moreover, the misconduct must amount "to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme] Court and by Congress to ensure the integrity of the grand jury's functions." *United States v. Williams*, 504 U.S. 36, 46–47 (1992) (holding that federal courts are restricted from invoking their supervisory power to create prosecution standards before the grand jury). An indictment cannot be dismissed for incompetent or insufficient evidence, nor for mere irregularities or general misconduct before the grand jury. *See Costello v. United States*, 350 U.S. 359, 363 (1956) (refusing to allow a challenge to the nature or sufficiency of the evidence presented to the grand jury where the indictment was valid on its face); *United States v. Chapman*, 209 F. App'x 253, 273–75 (4th Cir. 2006) (unpublished) (holding that defendant was not prejudiced by any government misconduct in its handling of the initial grand jury proceeding, and the cumulative effect of alleged governmental misconduct was not sufficiently egregious to warrant dismissal of the indictment).

Overall, courts rarely dismiss indictments — even without prejudice — and typically do so only when grave errors occurred before the grand jury. *See United States v. Dyman,* 739 F.2d 762, 768 (2d Cir. 1984) (holding that dismissal of an indictment due to defects in grand jury proceedings is "the most drastic remedy, and

- 8 -

thus is rarely used."); *Feurtado*, 191 F.3d at 423–24 (holding that dismissal of an indictment with prejudice was not warranted where law enforcement erroneously linked defendants to unrelated crimes during grand jury testimony, because mistake was inadvertent, untainted portions of testimony supported the indictment, and re-indictment was not based on objectionable testimony).

Even in circumstances where dismissal was appropriate, courts have decided against dismissal *with prejudice* because it would result in the defendant gaining a windfall and avoiding prosecution for criminal conduct. *See United States v. Derrick*, 163 F.3d 799, 807–08 (4th Cir. 1998) ("The dismissal of an indictment altogether clearly thwarts the public's interest in the enforcement of its criminal laws in an even more profound and lasting way than the requirement of a retrial."); *United States v. Lawson*, 502 F. Supp. 158, 172 (D. Md. 1980) (concluding that dismissal was appropriate, but that it should be without prejudice, because defendants "have no concomitant right to bar forever investigation into their alleged criminal conduct" absent systematic and pervasive government misconduct in front of the grand jury). Clearly, the defendants must overcome a high standard to disturb the grand jury's finding of probable cause.

## A.

I find that the inclusion of Doctor's D's convictions as further explained in the Superseding Indictment was neither improper not misleading. As an initial

matter, the Superseding Indictment's reference to Doctor D and his separate healthcare fraud convictions are of a limited nature and are not central to the charges against the defendants. *See Feurtado*, 191 F. 3d at 424 (finding that aside from the misleading testimony, which was later corrected in a superseding indictment, the other testimony and evidence established probable cause to support the charges contained in the indictment). Three other physicians are discussed in the factual allegations, the Superseding Indictment alleges four other parts of the global scheme, and Doctor D's convictions are a collateral topic that is not a required element in any of the charged counts.

Dismissal of the entire Superseding Indictment is an extreme sanction for one paragraph of potentially misleading information in the face of other overwhelming evidence presented to the grand jury. In addition, the government took steps to cure any potential defect in the original Indictment by obtaining the Superseding Indictment, which clarified the nature of Doctor D's convictions to ensure that the defendants have not been prejudiced. *See United States v. Riley*, 643 F. App'x 291, 293 (4th Cir. 2016) (unpublished) (holding that the government's superseding indictment was obtained free from earlier errors made in the grand jury proceedings leading to the original indictment, so that the defendant was not prejudiced, and dismissal was not appropriate).

More importantly, the inclusion of Doctor D's convictions is not clearly improper under Fourth Circuit precedent, and the defendants' assertion conflates grand jury and trial procedure. The defendants are correct that admitting evidence of a coconspirator's conviction must be carefully done to avoid the inference of guilt by association; still, these are trial limitations that do not apply to the grand jury in its investigation of potential criminal activity. *See* Fed. R. Evid. 1101(d)(2) (The Federal Rules of Evidence expressly provide they do not apply to grand jury proceedings); *Calandra,* 414 U.S. at 343 (holding that the grand jury's "operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials").

The Supreme Court has repeatedly held that the grand jury's function is unique, its role being accusatory rather than adjudicatory, and therefore certain constitutional and evidentiary limitations are given different consideration or are simply not applicable in the grand jury context. *See, e.g.*, *Williams*, 504 U.S. at 51 (holding that government was not required to present exculpatory evidence before the grand jury, because it "would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."); *Calandra,* 414 U.S. at 344–45 (holding that the Fourth Amendment exclusionary rule does not apply in grand jury proceedings).

- 11 -

Neither the Supreme Court nor Congress have indicated that reference to an uncharged person's separate conviction in front of the grand jury is improper. In fact, at least one other district court has held that the government is permitted to inform the grand jury of a related individual's separate convictions when those crimes might be relevant to the crimes being investigated. *See United States v. Fisher*, 225 F. Supp. 3d 151, 165 (W.D.N.Y. 2016) (finding that the government's reference to the related convictions of the defendant's spouse could be produced to the grand jury when "those crimes might be relevant to charges that could conceivably be brought against the target. . . . [and] to give the grand jury a complete picture of [the defendant's] conduct.").

The *Fisher* holding also informs my analysis as to whether the references to Doctor D's convictions misled the grand jury. I agree with the government that inclusion of Doctor D's healthcare fraud indictment and eventual conviction is potentially relevant to the defendants' charged conduct. The government asserts that the convictions were intended to show that the defendants had notice that Doctor D was operating in a careless manner, and they could have ceased referring potential patients to him upon his separate indictment.

Regardless, the defendants' concern about implied guilt by association does not correspond with the explicit language in the Superseding Indictment, and is not as significant a concern in the grand jury context as it is in the trial context. The

defendants' argument that the court should dismiss the Superseding Indictment due to the possibility that information could have misled the grand jury, but without evidence of actual government misconduct, is in direct contravention to the Court's holdings in *Williams,* 504 U.S. at 54–55 and *Bank of Nova Scotia*, 487 U.S. at 261.

As for the government's failure to initially present evidence of Doctor D's separate healthcare fraud convictions in connection with the return of the original Indictment, the Fourth Circuit has found that such a mistake in similar circumstances does not warranted dismissal. *United States v. Mills*, 995 F.2d 480, 487–88 (4th Cir. 1993) (affirming post-trial conviction and upholding an indictment based entirely upon mistaken evidence because the grand jury still could have rationally found probable cause to accuse the defendant). Regardless, the government re-introduced all of the evidence relating to Doctor D and the defendants' relationship with Doctor D for the Superseding Indictment. *See Riley*, 643 F. App'x at 293.

The government's reference to Doctor D's separate healthcare fraud convictions in front of the grand jury was not improper, because the procedural and evidentiary requirements do not apply in the grand jury context unless the Supreme Court or Congress has expressly forbidden the particular information. Even if the reference had been improper, it likely would not have "substantially influenced" the grand jury nor created "actual prejudice" against the defendants due to the extensive other credible and relevant evidence presented to the grand jury and explicitly

mentioned in the Superseding Indictment. *See United States v. Al Mudarris*, 695 F.2d 1182, 1187–89 (9th Cir. 1983) (holding that while the prosecutor repeatedly acted improperly before the grand jury, dismissal was not warranted due to the other "credible and relevant evidence that was virtually conclusive of guilt" so that the reference to the arson allegations against the defendants' brother "could not have prejudiced [the defendants] in any practical sense."); *United States v. Scheufler*, 599 F.2d 893, 896–97 (9th Cir. 1979) (holding that potential improper evidence explaining background of the government's investigation would not prejudice the defendant due to the other overwhelming, relevant evidence introduced during the grand jury proceeding).

## B.

The defendants also assert that they are entitled to all the grand jury transcripts not previously disclosed to them — namely, the government's colloquy and instructions to the grand jury — to determine whether a dismissal should be with prejudice. The defendants raise three points in support of this request, all of which are unpersuasive. The first is their admitted assumption that the government must have misstated the law in its instructions to the grand jury. The second is that Doctor D's conviction was included in the original Indictment without that evidence being presented, although it was later submitted to the grand jury for the Superseding Indictment. Finally, the defendants point to what they contend were Fifth

Amendment violations resulting from the government's continued questioning of witnesses in front of the grand jury after the witness had invoked the Fifth Amendment upon advice of counsel.

The defendants claim that these instances of alleged government misconduct constitute constitutional error that substantially influenced the grand jury or casts "grave doubt that the decision to indict was free from the substantial influence," prejudiced the defendants, and entitles them to review the entirety of the grand jury transcripts to determine whether there were other errors that require dismissal of the charges with prejudice. Defs.' Mem. Supp. Mot. Dismiss 14–16, ECF No. 82; Defs.' Reply Mem. 16–17, ECF No. 138.

The defendants have moved for release of the complete grand jury transcripts from the original Indictment and Superseding Indictment under Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure. In addition to the Rule's requirements, a party requesting grand jury transcripts must make a "strong showing of particularized need" to access the additional grand jury information. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983) (also noting that the party seeking disclosure bears the burden); *see also In re Grand Jury Subpoena,* 920 F.2d 235, 241 (4th Cir. 1990) ("[S]ubstantive content of matters occurring before the grand jury can be anything that may reveal what has transpired before the grand jury."); *United States v. Welch*, 201 F.R.D. 521, 524 (D. Utah 2001) (holding that instructions to a

grand jury are matters occurring before the grand jury, so that a defendant is required to show particularized need to obtain disclosure, which requires more than bare speculation, generalized complaint, or a fishing expedition).

In determining whether the defendants have established a "particularized need," I must balance the defendants' asserted need for release against the traditional public interest reasons for grand jury secrecy, and "only in those cases where the need for [disclosure] outweighs the public interest in secrecy" will the requirement of "particularized need" for release be found to exist. *Sells*, 463 U.S. at 443; *see also In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1298–99 (4th Cir. 1986). The examination for the presence of the particularized need must be undertaken first and then, if shown, it will be evaluated against the need for continued secrecy. *See Douglas Oil Co. of Cal. v. Petrol Stops NW.,* 441 U.S. 211, 222–23 (1979) (noting that any disclosure "may include protective limitations on the use of the disclosed material"). The defendants base their request on alleged grand jury abuse; therefore, they must also overcome the presumption of regularity attached to grand jury proceedings. *United States v. Ahmad*, No. 1:14cr164 JCC, 2014 WL 2766121, at *3 (E.D. Va. June 18, 2014).

A defendant seeking production of grand jury materials must do more than make general unsubstantiated or speculative allegations of impropriety to prevail under Rule 6(e)(3)(E)(ii). *See United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th

- 16 -

Cir. 1980); *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004) (explaining that the reason for the high burden is so that a defendant cannot "engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred"). As I discuss below, the defendants have not demonstrated government misconduct — particularly not misconduct that substantially affected the grand jury's decision to indict — nor have they met the high burden of demonstrating a strong showing of particularized need for release.

1. Grand Jury Instructions.

The defendants assume that the government misstated the applicable law in their grand jury instructions, including but not limited to Doctor D's convictions, but they present no evidence to support such a claim. The defendants primarily point to the language of the Indictment, which is clearly not instructions to the grand jury, and the government's admission that it initially forgot to introduce evidence of Doctor D's convictions. This is not a strong showing of particularized need, and the defendants have not alleged exact, well-grounded facts to support their claims of irregularities. *See Ahmad*, 2014 WL 2766121, at *3 (holding that the defendant "bears the heavy burden of establishing that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment" and entitlement to

- 17 -

view grand jury transcripts to determine whether dismissal should be with prejudice, and this burden "cannot be satisfied with conclusory or speculative allegations of misconduct").

The government also correctly asserts that the case the defendants rely upon for this point, *United States v. Stevens*, 771 F. Supp. 2d 556 (D. Md. 2011), is inapposite to their claims. The erroneous instructions in *Stevens* did not go to the actual evidence, but to whether the advice-of-counsel defense would negate an element of the offense in that case. *Id.* at 567–68. Any such potential erroneous instructions as to Doctor D's convictions would not conceivably have negated an element of any of the charged offenses in this case, and the defendants have not further argued the point.

### 2. Fifth Amendment Invocation.

The government's questioning of witnesses in front of the grand jury to determine the contours of their asserted Fifth Amendment privilege claims was not improper and, therefore, could not be a grave error that "substantially influenced" the grand jury and actually prejudiced the defendants; nor does it warrant further disclosure and examination of the grand jury transcripts. The Supreme Court has made clear that a witness in front of the grand jury has an obligation to answer questions unless it implicates a valid privilege. *Calandra*, 414 U.S. at 345–46 ("The duty to testify has long been recognized as a basic obligation that every citizen owes

- 18 -

his Government. . . . [Thus,] a witness may not interfere with the course of the grand jury's inquiry . . . [unless the witness has claimed] a valid privilege."); *United States v. Mandujano*, 425 U.S. 564, 572 (1976) (plurality opinion) ("[T]he Fifth Amendment does not confer an absolute right to decline to respond in a grand jury inquiry; the privilege does not negate the duty to testify but simply conditions that duty. The privilege cannot, for example, be asserted by a witness to protect others from possible criminal prosecution.").

Even when a witness properly invokes the Fifth Amendment privilege, the witness still has to assert the right "as to each line of questioning by the government." *United States v. Smith*, 623 F. Supp. 2d 693, 709 (W.D. Va. 2009), *aff'd*, 456 F. App'x 200 (4th Cir. 2011) (unpublished); *see also United States v. Shuck*, 895 F.2d 962 (4th Cir. 1990) (finding that the prosecutor did not commit misconduct by repeatedly asking the witness questions about the subject for which the Fifth Amendment privilege was invoked). The defendants overlook the critical distinction between custodial interrogation, where one can make a blanket assertion of the privilege against self-incrimination and questioning must cease, and testimony before a grand jury, where a witness must repeatedly assert the Fifth Amendment privilege. *See Mandujano,* 425 U.S. at 579–81 ("[M]any official investigations, such as grand jury questioning, take place in a setting wholly different from custodial police interrogation . . . [so] when [a] grand jury witness asserts the [Fifth

Amendment] privilege, questioning need not cease, except as to the particular subject to which the privilege has been addressed."); *Smith*, 623 F. Supp. 2d at 709.

I will not go into detail about the grand jury testimony of various Indivior employees. Nonetheless, the invocations of blanket privilege by numerous witnesses may not have been valid. While the grand jury, through the government, could have moved the court to determine the validity of the invoked privilege, that is not necessary where the grand jury and the government choose to cease questioning a witness that invalidly claims blanket Fifth Amendment privilege. *Mandujano*, 425 U.S. at 575; *Shuck*, 895 F.2d at 967 (observing that "when [the defendant] invoked his privilege when questioned about other persons, it would have been preferable for the assistant United States attorney to have asked the court to decide whether the privilege was properly asserted"). Consequently, the government's conduct in continuing its questioning of the witnesses was not improper. Even if it was improper, the evidence does not suggest that it substantially influenced the grand jury nor would it have prejudiced the defendants given the weight of the other evidence.

### 3. Systemic and Pervasive Abuse.

Finally, the defendants assert that a member of the prosecution team has a record of similar conduct in front of the grand jury and that this amounts to systematic and pervasive abuse, which both entitles them to additional review of the

- 20 -

grand jury transcripts and warrants dismissal of the indictment with prejudice. Def. Mem. Supp. 26, ECF No. 82. In reality, the prosecutor in question has two known instances of conduct judicially remarked upon, but they occurred years apart. Only one of the two instances involved improper conduct in front of the grand jury, but it was found not to be prejudicial. This prior conduct was also categorically different from what occurred before the grand jury in this investigation.

Most importantly, the systematic and pervasive abuse test, by definition, applies to the United States Attorney's Office for the Western District of Virginia as a whole rather than to a specific prosecutor. *See United States v. Braswell*, Nos. 93–5770, 93–5813, 1995 WL 47989, at *4 (4th Cir. Feb. 8, 1995) (unpublished). The defendants have presented no such evidence. Furthermore, two instances of questionable conduct hardly amount to pervasive abuse. *See Bank of Nova Scotia*, 487 U.S. at 260 (holding that the court was "not faced with a history of prosecutorial misconduct, spanning several cases, that [was] so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment."); *Derrick*, 163 F.3d at 809.

Ultimately, the defendants' conclusory allegations of government misconduct are insufficient and legally incorrect. *See Ahmad*, 2014 WL 2766121, at *3. The defendants also have not demonstrated a strong showing of particularized need for

- 21 -

the transcripts of the grand jury colloquy and instructions, so that disclosure is not appropriate.

IV.

For the foregoing reasons, it is **ORDERED** that the defendants' Motion to Dismiss, ECF No. 81, is DENIED, including the related request for further grand jury materials.

ENTER:  November 14, 2019

/s/  James P. Jones_____
United States District Judge