IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

**UNITED STATES OF AMERICA**

          v.                                      CASE NO. 1:19cr00016

**INDIVIOR INC. (a/k/a Reckitt Benckiser**
      **Pharmaceuticals Inc.) and**
**INDIVIOR PLC**

### INDIVIOR'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO INDIVIOR'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT[*]

Indivior Inc. and Indivior PLC (collectively, "Indivior") respectfully submit this reply to the government's response to Indivior's Motion to Dismiss the Superseding Indictment, to Strike Surplusage and for Inspection of Grand Jury Materials. *See* Government's Response in Opposition to Indivior's Second Motion to Dismiss, ECF No. 275 ("Gov. Br.").

### INTRODUCTION

In its opposition brief, the government fails to explain how it has properly pled wire fraud in Counts Seven, Eleven, and Thirteen through Twenty-Eight. Deploying the language of accomplice liability found in 18 U.S.C. § 2 the government alleges in the Superseding Indictment that Indivior aided and abetted physicians "it knew were issuing careless, clinically unwarranted opioid prescriptions," ¶¶ 102-12 (Doctor A), ECF No. 115 ("Sup. Ind."); *id.* ¶¶ 113-27 (Doctors B & C); *id.* ¶¶ 128-43 (Doctor D), by including these doctors in Indivior's "Here to Help" physician referral program, *id.* ¶ 98, and by providing them with "marketing materials, billing advice, and access to lunch and dinner events," *id.* ¶ 99 (collectively the "Careless

---

[*] This publicly filed version of this memorandum is redacted pursuant to this Court's Order of April 9, 2019, as amended on May 23, 2019 and August 12, 2019. An un-redacted memorandum has been filed under seal.

- 1 -

Prescriber Allegations"). Despite including the legally significant language of Section 2, the government concedes it will not pursue accomplice liability against Indivior based on the physicians' alleged careless conduct. *See* Gov. Br. 8. Instead, the government takes the position that the allegations that Indivior aided and abetted careless conduct constitute a means to commit an alleged scheme to defraud. *See id.* at 7. But nowhere does the government explain how. In fact, the government fails to cite a single case in support of its position that aiding and abetting careless conduct can be a means to commit fraud as a matter of law. Rather than answer the question at hand, the government argues that the Court has no role here. *Id.* at 6-8. We respectfully disagree. The Court has a critical role as gatekeeper to ensure that the charges set forth are legally cognizable offenses before they may be presented to a jury that will be asked to convict Indivior. Counts Seven, Eleven, and Thirteen through Twenty-Eight fail this test.

Once charges pass that threshold test, the Court has a further role in preventing jury confusion and undue prejudice. The government wholly ignores this point in its opposition brief. The aiding and abetting allegations in the Superseding Indictment confused Magistrate Judge Sargent, who has been on the bench handling complex cases for more than 20 years. *See* Hearing Tr. 33, 35-37, 42-43, Oct. 1, 2019. It is unfair to expect more from any juror. Moreover, the Court should not allow the government to sidestep Rule 404(b) of the Federal Rules of Criminal Procedure by including allegations in the Superseding Indictment of "other acts" as evidence of intent. Gov. Br. 8. These allegations should be stricken from the Superseding Indictment as prejudicial surplusage.

The government also fails to reconcile how the Careless Prescriber Allegations and the allegations of misstatements regarding pediatric exposure and diversion risk are means to commit a single scheme to defraud. The government does not address the disjointed timelines,

different participants, and varied goals of the two alleged schemes in its duplicity analysis.  *See* Gov. Br. 9-11.

Regarding its conduct before the grand jury, the government never addresses the defendants' argument, but rather, mischaracterizes the indisputable factual record as "rank speculation."  Gov. Br. 12.  *In camera* inspection of the prosecutors' colloquy with the superseding grand jury could easily resolve whether further proceedings are warranted to determine whether the prosecutors in this case usurped the proper role of the grand jury.

Finally, the government makes meritless claims that Indivior "sandbagged" the government by filing the instant motion nearly five months before trial.  *See id.* at 11-12.  The government's position conflicts with the reality of how this litigation has proceeded.

## I.   THE COURT SHOULD DISMISS COUNTS SEVEN, ELEVEN, AND THIRTEEN THROUGH TWENTY-EIGHT FOR FAILURE TO STATE AN OFFENSE

Among the twenty-two wire fraud counts of the Superseding Indictment, Counts Seven, Eleven, and Thirteen through Twenty-Eight allege that Indivior committed wire fraud by making "referrals of prospective patients to Doctor A."  Sup. Ind. 41-42.  The government argues that these allegations are merely a "means" of committing a scheme to defraud health care benefit programs.  *See* Gov. Br. 1, 7.  It also asserts that it will prove at trial that "Indivior's patient referrals and aid to certain doctors were fraudulent."  *Id.* at 7.

But before the government is allowed to make its case to a jury, it must first—in the charging document—allege a "statement of the essential facts constituting the offense charged." Fed. R. Crim. Pro. 7(c)(1).  This is not a matter of the sufficiency of the evidence, as the government erroneously argues.  *See* Gov. Br. 6-8.  It is matter of notice to the defendant wherein the indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all elements necessary to constitute the offence."  *United States v. Brandon*,

298 F.3d 307, 310 (4th Cir. 2002) (citation omitted).  Although that standard can at times be satisfied through a recitation of statutory elements, that is not the case where the government alleges a complex fraudulent scheme that spans more than thirteen years and involves multiple and novel alleged means.  *See United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014) ("[A]ny general description based on the statutory language 'must be accompanied by such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'") (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)).  The point is two-fold: (1) to apprise the defendant of "what he must be prepared to meet" so that he will not be misled while preparing his defense and (2) so that "he may plead a former acquittal or conviction."  *Russell v. United States*, 369 U.S. 749, 763-64 (1962) (citation omitted).  And an "important corollary purpose" to this requirement is "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had."  *Id.* at 768.

Nowhere does the Superseding Indictment allege even a modicum of facts to support the most fundamental aspect of these wire fraud claims concerning referrals to Doctor A: a scheme to defraud or a fraudulent misrepresentation.  *See, e.g.*, *Williams v. Aztar Indian Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) ("A necessary element of a scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact…").  Counts Seven, Eleven, and Thirteen through Twenty-Eight do not allege that Indivior made any misrepresentations in its referrals to Doctor A or to the patients it referred to her; that these referrals in themselves were somehow fraudulent; how these referrals indirectly aided or abetted any fraud associated with the "careless and clinically unwarranted conduct" of Doctor A, or how they relate to convincing physicians to switch to Suboxone Film.  Sup. Ind. 41-42.  In fact, the

Superseding Indictment directly attributes the referrals to the "Here to Help operators . . . [who] us[ed] lists of enrolled prescribers in the patients' geographic areas." *Id.* at ¶¶ 106, 108, 110, 112. Nor are there any facts alleged that link Indivior's purported interactions with the physicians—including "marketing materials, billing advice, and access to lunch and dinner events"—with a misrepresentation or scheme to defraud. *Id.* at ¶ 99. Contrary to the government's implicit position, Indivior's alleged knowledge of Doctor A's careless prescription practices is not sufficient, without more, to convert referrals based on geographical proximity into wire fraud.

To state a claim of wire fraud, there also must be an allegation of "specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method." *United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012). Patient referrals thus have no relevance to a wire fraud claim absent an allegation of specific intent to deprive someone of something through some falsity or fraudulent scheme. If the government's purported scheme to defraud is premised on Doctor A prescribing carelessly, it failed to allege even a single example of an improper reimbursement claim, much less that the reimbursement claim was tied to a patient who was referred to Doctor A by Indivior in one of the wire fraud counts. And because the government's purported victims are health care benefit programs, it must allege how the referrals were in furtherance of Indivior's specific intent to deprive a government program of money. It has not done so.

The government mischaracterizes these glaring omissions as matters of the sufficiency of the evidence for the jury to decide.[1] Gov. Br. 6-7. It is mistaken. Before the government can

---

[1] The government's intent in including the Careless Prescriber Allegations may be revealed by its argument that the "patient referrals and aid to doctors" are evidence of "intent to defraud." Gov. Br. 8. If the government wants to have tangential other bad act evidence admitted at trial to prove intent, it should make advance disclosure and a motion pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure.

argue to a jury that the above constituted fraud, it must allege facts that, if believed, could support the wire fraud counts as a matter of law. *See United States v. Berg*, 710 F. Supp. 434, 436 (E.D.N.Y. 1988) ("One or more counts of an indictment may be dismissed if the facts alleged are insufficient as a matter of law to support a conviction under the charged offense."). But there are simply no factual allegations of a false statement or scheme to defraud, or specific intent to defraud that relates to patient referrals to Doctor A.[2] *See United States v. Keuylian*, 23 F. Supp. 3d 1126, 1127 (C.D. Cal. 2014) (dismissing wire fraud count because "the Indictment fails to describe any act of deception committed by [the defendant]. It alleges no misrepresentation, no false pretense, no false promise, and no concealment."). As a result, the Court should dismiss Counts Seven, Eleven, and Thirteen through Twenty-Eight for failure to state wire fraud as a matter of law. *See Russell*, 369 U.S. at 763-64, 768.

## II. THE COURT SHOULD STRIKE ALLEGATIONS THAT INDIVIOR "AIDED AND ABETTED" PHYSICIANS WHO PRESCRIBED IN A "CARELESS AND CLINICALLY UNWARRANTED" MANNER

The Superseding Indictment parrots 18 U.S.C. § 2(a) when it repeatedly alleges that Indivior "aided and abetted" doctors who prescribed in a "careless and clinically unwarranted manner." Sup. Ind. ¶¶ 97, 102, 113, 128; Count Two ¶ 4(d). Indivior moved to strike these allegations for failure to state an offense if premised on the physicians' "unnecessary prescriptions" as the principle offense. The government disavows that theory, arguing instead that these allegations are solely intended to be "a means of the alleged fraud," the object of which "was to fraudulently convert prescriptions to Suboxone Film for monetary gain." Gov. Br. 1, 7. But the government fails to link the means and the object in any meaningful way.

---

[2] The government does not allege even a single example of an improper reimbursement claim tied to a patient who was referred to *any* doctor by Indivior. Because the government's purported victims are health care benefit programs, it must allege how Indivior's actions defrauded these programs of money or property. It does not do so.

- 6 -

The Court should strike the "aiding and abetting" language as surplusage in the Introduction and Count Two of the Superseding Indictment. "A motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (internal brackets and quotation marks omitted). The legal terms of art employed here—"aiding and abetting"—clearly fall within that spectrum. They are not tied to the charged conduct of "fraudulently convert[ing] prescriptions to Suboxone Film" and thus not relevant. Gov. Br. 1, 2, 7. More importantly, they are highly prejudicial to Indivior as they literally allege Section 2 liability based on assistance of a crime allegedly committed by uncharged and unnamed physicians – without ever specifying what that crime is. Because the government unequivocally denies that it is charging "independent crimes," *see id.* at 8, it should not be allowed to casually drop this accomplice liability language into the Superseding Indictment. *See United States v. Manginen*, 565 F. Supp. 1024, 1025 (E.D. Va. 1983), *aff'd*, 788 F.2d 1561 (4th Cir. 1986) (striking language as prejudicial and unnecessary to the indictment when the phrase "is utterly incomprehensible"). The government's disclaimer of any charge based on 18 U.S.C. § 2(a) accomplice liability renders the Section 2 language legally meaningless but highly prejudicial. Thus, this language should properly be struck. *See id.* at 1025 ("That which is unintelligible is properly regarded as surplusage.").

### III. COUNTS ONE AND TWO ARE IMPERMISSIBLY DUPLICITOUS

The government's arguments to rebut the impermissible duplicity of Counts One and Two rely on three facts it purports bind the two schemes together: (1) that "Indivior formulated the alleged scheme[s];" (2) "the transactions all involved communications regarding Suboxone;"

and (3) "were made during the promotion of Suboxone Film." Gov. Br. 11. That is flatly false based on the government's own allegations in the Superseding Indictment.

First, the Careless Prescriber Allegations must, by necessity, have foremost been performed by the physicians who actually wrote the prescriptions. The primary role of the physicians in that scheme is evidenced by the government's choice of the "aiding and abetting" terminology. Per the Superseding Indictment, Indivior allegedly aided and abetted the physicians, but it did so as a means of committing its separate scheme whereby it allegedly induced physicians through misrepresentations regarding safety and diversion risk to switch from tablets to Suboxone Film ("Misrepresentation Allegations"). Thus it is not true that Indivior was the preeminent actor in *both* schemes.

Second, the "transactions," or means of carrying out the two schemes, did not all involve communications about Suboxone. At the hearing before Judge Sargent, the government alleged that the Careless Prescriber Allegations began "before they switched to film." Hearing Tr. 35, Oct. 1, 2019 ("When they just had a tablet, they wanted these doctors to write the drugs also.").

Third, the allegations related to the Careless Prescriber Allegations span from 2008 to 2016, *see* Sup. Ind. ¶¶ 97-143, while the allegations related to the Misrepresentation Allegations span from 2006 to 2013, when Indivior's managers are alleged to have decided that "[u]nder no circumstances can we make the claim that Suboxone Film is safer or better at reducing pediatric exposures," *id.* at ¶ 75; *see also id.* ¶ 96 (alleging that the latest misrepresentation alleged is "[b]efore" December 2013).

The government ignores the disjointed timelines, different participants, and the varied goals of the two different alleged schemes to defraud. It makes no sense to characterize all of the above conduct as an integrated whole when the physicians are alleged victims of one scheme,

while co-conspirators of the other.  These contradictory elements render the schemes entirely separate and cannot fairly be considered "part of a single, continuing scheme." *United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018) (internal quotation marks omitted).

**IV.  THE COURT SHOULD ORDER *IN CAMERA* INSPECTION OF THE PROSECUTORS' COLLOQUY WITH THE SUPERSEDING GRAND JURY**

The government argues that "Indivior's theory that the prosecution 'usurped' the Grand Jury's constitutional role by denying it an opportunity to deliberate makes even less sense now than on its first motion to dismiss, given that the Superseding Indictment differs from the original Indictment by only a few words in paragraph 143 and the Notice of Forfeiture." Gov. Br. 12. But this argument ignores that the *presentation to the grand jury* went beyond these few changes to the indictment itself, and attempted to correct the prior abuse of not putting *any* evidence before the grand jury to support at least three pages of allegations in the original indictment concerning Doctor D.

[text redacted]

These are indisputable facts, not "rank speculation." Gov. Br. 12. They imply that the prosecutors usurped any opportunity by the grand jury to consider the record on which the government now relies. But there is no need for any uncertainty. The Court can order an *in camera* inspection of the prosecutors' colloquy to ascertain whether the grand jury was afforded any genuine opportunity to consider this evidence, or whether it was merely a sham presentation to paper the record. Such a review is necessary, especially in light of the misconduct detailed in the motion to dismiss the original indictment, to determine if the Superseding Indictment is "the product of an investigative deliberation that is independent of both the prosecuting attorney and the court [because] [w]ithout a guarantee of independence, the indictment would not be the genuine issue of a grand jury within the meaning of the Constitution." *United States v. Leeper*, No. 06-cr-58A, 2006 WL 1455485 (W.D.N.Y. May 22, 2006) (citation and quotation marks omitted).

## V.  INDIVIOR TIMELY MOVED TO DISMISS THE SUPERSEDING INDICTMENT

The government accuses Indivior of "sandbagging" by filing a motion to dismiss the Superseding Indictment nearly five months before trial. *See* Gov. Br. 11-12. In particular, the government's complaint centers on its need to respond to other motions pending in the case and to handle its ordinary trial preparation. These arguments are wholly without merit. Indivior filed a motion to dismiss the Superseding Indictment when it became ripe. The government cannot complain of being "outflank[ed]" when has had the full arsenal of federal resources targeted against Indivior throughout its seven-year investigation, and appears to employ at least nine trial attorneys in this prosecution. *Id.* at 12. Moreover, Indivior has agreed to extensions of filing deadlines each and every time the government has sought one, including the recently filed suppression motion. This motion would have been no different.

For the reasons explained in its Objections to the Magistrate Judge's Order to Stay, ECF No. 263, Indivior timely filed its motion to dismiss the Superseding Indictment. The Scheduling Order from July 2019, ECF No. 79, was set to govern the original indictment filed in April 2019, not the Superseding Indictment filed in August 2019. ECF No. 1, 115. Indivior was not even arraigned on the Superseding Indictment until nearly a month past the Scheduling Order's deadline to move to dismiss the original Indictment.[3] *See* Arraignment and Motion Hearing Tr., Oct. 4, 2019 (ECF No. 200); Scheduling Order, July 16, 2019 (ECF No. 79). The default deadline to file motions to dismiss under the Federal Rules of Criminal Procedure is the start of trial. *See* Fed. R. Crim. P. 12(c)(1). The one case cited by the government, *United States v. Mathis*, 932 F.3d 242, 256-57 (4th Cir 2019), does not support its argument. That case involved a defendant's purposeful delay in filing a motion to dismiss until after the beginning of trial to try to gain a strategic advantage in plea negotiations. By contrast, the present motion was filed almost five months before trial and only one month after the Court's denial of the motion to dismiss the original indictment, which could have rendered the Superseding Indictment "meaningless." Arraignment and Motion Hearing Tr. 40, Oct. 4, 2019 (ECF No. 200).

Moreover, there is good cause to consider the merits of the motion to dismiss as this is a complex case with, as Judge Sargent acknowledged, a confusing charging instrument. *See, e.g.*, Hearing Tr. 33, 35-37, 42-43, Oct. 1, 2019 (explaining that "this is where my confusion was" and that these allegations "left me a little confused as to what the alleged illegal conduct was" and

---

[3] Given that the government filed a Superseding Indictment in the midst of briefing on the motion to dismiss, Indivior reserved the right to file a motion to dismiss the Superseding Indictment if the first motion was denied. *See* Def.'s Reply Mem. in Support of Motion to Dismiss the Indictment for Compound Jury Misconduct, at 5 n.7 (Sept. 6, 2019), ECF No. 134 ("If the Court determines that the original Indictment need not be dismissed with prejudice, Indivior respectfully reserves the right to move to dismiss the superseding indictment, for which there are abundant grounds in addition to those asserted with respect to the original Indictment."). The District Court held a hearing on the first motion to dismiss on October 4, 2019, where again Indivior raised its right to attack the Superseding Indictment once the Court ruled on the first motion to dismiss related to grand jury misconduct, which could have vitiated any need to file a subsequent motion to dismiss. *See* Hearing Tr. 38, 40, Oct. 4, 2019.

whether the conspiracy involved only misrepresentations "that [Suboxone Film] was a safer formulation" or also included a conspiracy charge about doctors prescribing to too many patients or in too high doses, and even suggesting that "the government need[s] to be clearer on that particular allegation"). Indivior's effort to clarify these incoherent charging issues in the original indictment via a bill of particulars was not successful. *See* Opinion and Order Denying Objections, ECF No. 255, Dec. 23, 2019. Once the motion to dismiss the Superseding Indictment became ripe, Indivior should not be faulted for raising the constitutional concerns in a motion to dismiss nearly five months before trial.

## CONCLUSION

For the above reasons, the Court should dismiss Counts Seven, Eleven, and Thirteen through Twenty-Eight for failure to state an offense; strike the "aiding and abetting" allegations from the Superseding Indictment, or, in the alternative, dismiss Counts One and Two as duplicitous; and order *in camera* inspection of the prosecutors' colloquy with the grand jury related to the return of the Superseding Indictment.

Dated: January 21, 2020

Respectfully submitted,

INDIVIOR INC. (a/k/a Reckitt Benckiser Pharmaceuticals Inc.) and INDIVIOR PLC

/s/ James P. Loonam
By Counsel

Thomas J. Bondurant, Jr. (VSB No. 18894)
**Gentry Locke**
10 Franklin Road SE
Roanoke, Virginia. 24022
(540) 983-9389
bondurant@gentrylocke.com

Jennifer S. DeGraw (VSB No. 89962)
**Gentry Locke**
10 Franklin Road SE
Roanoke, Virginia. 24022
(540) 983-9445
degraw@gentrylocke.com

James P. Loonam (admitted *pro hac vice*)
**Jones Day**
250 Vesey Street
New York, New York 10281
(212) 326-3808
jloonam@jonesday.com

Kathryn K. Mizelle (admitted *pro hac vice*)
**Jones Day**
51 Louisiana Avenue NW
Washington, D.C. 20001
(202) 879-3611
kmizelle@jonesday.com

Dia Rasinariu (admitted *pro hac vice*)
**Jones Day**
51 Louisiana Avenue NW
Washington, D.C. 20001
(202) 879-4657
drasinariu@jonesday.com

Peter J. Romatowski (admitted *pro hac vice*)
**Jones Day**
51 Louisiana Avenue NW
Washington, D.C. 20001
(202) 879-7625
pjromatowski@jonesday.com

James R. Wooley (admitted *pro hac vice*)
**Jones Day**
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-7345
jrwooley@jonesday.com

- 14 -

## CERTIFICATE OF SERVICE

  I hereby certify that I caused the foregoing to be presented to the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record, on this 21st day of January, 2020.

/s/ James P. Loonam
Counsel for Defendants