# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:19CR00016 |
| | ) | |
| **INDIVIOR INC., ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER
## DENYING MOTION TO SUPPRESS

*ARGUED: Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; James P. Loonam, JONES DAY, New York, New York, for Defendants; ON BRIEF: Daniel P. Bubar, First Assistant United States Attorney, Albert P. Mayer, Kristin L. Gray, Joseph S. Hall, Garth W. Huston, Janine M. Myatt, and Carol L. Wallack, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, Abingdon, Virginia, for United States; David Morrell, Deputy Assistant Attorney General, Matthew J. Lash, Charles J. Biro, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, CONSUMER PROTECTION BRANCH, for United States; Peter J. Romatowski, James R. Wooley, Georgina Druce, Katherine K. Mizelle, and James M. Gross, JONES DAY, for Defendants; Thomas J. Bondurant, Jr., and Jennifer S. DeGraw, GENTRY LOCKE, Roanoke, Virginia, for Defendants.*

The defendants in this criminal prosecution have moved to suppress evidence seized during a search of corporate business premises pursuant to a search warrant. The government opposes suppression. For the following reasons, I will deny the defendants' Motion to Suppress.

I.

The defendants, Indivior Inc. and its parent company, Indivior PLC,[1] are

alleged to have deceived health care providers and benefit programs into believing

that the prescription medication Suboxone® (buprenorphine and naloxone)

sublingual film is safer and less susceptible to diversion and abuse than other similar

drugs. The Superseding Indictment charges the defendants with: (1) one count of

conspiracy to commit mail, wire, and healthcare fraud, all in violation of 18 U.S.C.

§ 1349; (2) one count of healthcare fraud, in violation of 18 U.S.C. §§ 2 and 1347;

(3) four counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341; and (4) twenty-

two counts of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343.

The defendants make four arguments in their suppression motion. First, the

Search Warrant was invalid because the government omitted  from its application

material information about the original human source of its information and that

person's financial conflict. Second, the warrant was facially invalid because it failed

to properly attach or incorporate the supporting documents. Third, the warrant's

language was overly broad and lacked probable cause to seize a majority of the

defendants' physical and electronic files. Finally, the government exceeded the

---

[1] Indivior Inc. was known as Reckitt Benckiser Pharmaceuticals, Inc. ("RBP")
before it was obtained by Indivior PLC in December 2014. The business premises at the
time of the search were occupied by RBP, but for convenience, I will refer to the search
having occurred at the defendants' premises, the government's seizure being of the
defendants' property, and employees of RBP being those of the defendants.

scope of the warrant. The defendants also claim that the government's retention of the seized evidence has been unreasonable.

The government responds that the magistrate judge's probable cause finding is presumptively valid and, even if the Search Warrant is found to be invalid for the reasons argued by the defendants, the government relied in good faith on the warrant so that suppression is an extreme remedy. The government insists that its cooperating witness's status as a *qui tam* relator does not make her less credible, but actually increases her reliability since her financial incentives are dependent on whether her information is accurate. Consequently, the omission of this fact was not material to the magistrate judge's probable cause determination. As for the attachment or incorporation issue, the government maintains that the materials necessary to satisfy the Fourth Amendment's particularity requirement were attached to the Search Warrant and also incorporated by reference.

The government asserts that the Search Warrant was not overly broad due to the circumstances of its investigation into a fraud scheme that appeared to permeate the business. In addition, the government points to the tailored language in the Search Warrant's things to be seized section that seeks materials relating to the specific pharmaceuticals and the areas of the business likely to have stored information about the scheme. The government acknowledges that some of the seized items might have been outside the scope of the warrant — specifically,

information relating to a third pharmaceutical not discussed in the affidavit or the eventual Superseding Indictment  — but claims that such errors do not require blanket suppression.  Finally, the government details how the seized information has been retained, as well as its efforts to segregate privileged and irrelevant materials from its database with the cooperation of the defendants.

## II.

The  investigation leading to the present case commenced in April 2013, when an employee of the defendants met with the government to report suspected criminal activity and initiate the whistleblower process.  The cooperating witness provided internal documents she had gathered from the defendants in order to corroborate her statements.    A  few  weeks  later,  the  cooperating  witness  secretly  recorded conversations and presentations at a corporate conference hosted by the defendants, as well as collected presentation materials.  She turned the recordings and materials over to the government.  The cooperating witness filed a *qui tam* complaint under seal in this court in May 2013.[2]  The government continued its investigation into the

---

[2] The *qui tam* action was unsealed in August 2018 when the United States partially intervened in the case.  Order, *United States of America, et al., ex rel. Ann Marie Williams v. Reckitt Benckiser, Inc., et al*, No. 1:13-CV-00036 (W.D. Va. Aug. 2, 2018), ECF No. 55. A *qui tam* action involves allegations that a business, corporation, or individual submitted false or fraudulent claims for payment to the government.  31 U.S.C. § 3729.  A *qui tam* action is initially filed under seal by a whistleblower pursuant to the False Claims Act ("FCA").  31 U.S.C. § 3730(b)(2).  The FCA system rewards successful *qui tam* relators with a partial recovery of the funds collected by the government if it intervenes in the action. 31 U.S.C. § 3730(d).  A *qui tam* relator is entitled to approximately 15 to 25 percent

defendants and eventually applied for a warrant to search the defendants' Richmond, Virginia, headquarters on December 2, 2013.

The government's application lists a number of suspected violations, some of which were included in the eventual Indictment and Superseding Indictment. The government's application was comprised of several documents, specifically: (1) the cover page listing the suspected violations and basis for the search; (2) the unsigned Search Warrant; (3) the supporting affidavit describing the investigation and the basis for finding probable cause; (4) Attachment A and its description of the place to be searched; (5) Attachment B and its description of the things to be seized; and (6) a selection of the internal documents turned over by the whistleblower to further support the probable cause finding.

The face of the Search Warrant explicitly incorporates Attachments A and B. The cover page of the application explicitly incorporates the supporting affidavit and notes that is attached as well. The affidavit describes the initiation of the investigation and provides relevant facts about the defendants, its related drug products,[3] and the suspected scheme to increase sales. The affidavit describes the government's source as a whistleblower, although it does not mention the *qui tam*

of the recovery if the government intervenes but can be entitled to between 25 and 30 percent of the recovery if the government does not intervene. *Id.*

[3] A related drug product is Subutex® tablets ("Subutex'), which contains buprenorphine but not naloxone.

action that remained under seal at the time. The affidavit also explains that the defendants' corporate headquarters likely held the requested material because it is a central location that would store information relating to their business activities across the country, as well as house their employees' offices and corporate-issued electronic devices. The affidavit seeks on-site imaging and later search of the devices off-site due to the anticipated volume of information. The affidavit also offers the secondary explanations that the government wants to reduce removal or destruction of evidence and minimize disruption to the functioning business.

Attachment A describes the defendants' headquarters and includes a map and photographs of the location. Finally, Attachment B is a four-page list of items to be seized that is organized by topic, with the universe limited to: Corporate property, materials relating to or discussing Suboxone and Subutex, a specific subset of the defendants' personnel, internal compliance reviews, the defendants' business strategies, and other related materials that would likely be found in hard-copy or electronic format. A magistrate judge of the Eastern District of Virginia found probable cause and signed the Search Warrant that same day.

The government executed the Search Warrant on December 3, 2013. A filter team had been established prior to execution of the warrant. The affidavit and application were under seal on the date of the search and were, therefore, not produced to the defendants or their employees. The defendants' employees were

directed to a central location and were asked to surrender their corporate-issued electronics. The government informed the defendants' general counsel about the warrant after entering the headquarters but before commencing the search. The defendants' general counsel then held a closed-door meeting with employees before the search commenced. The general counsel and outside counsel remained on-site during the search and met with the government at various points to discuss issues raised by the defendants. The search of the premises was completed that evening.

On December 4 and 5, the defendants' legal team was permitted to review seized hard-copy items to determine what the defendants urgently needed for their business operations; the originals were then returned, and the scanned versions were retained by the government. On December 6, 2013, the government received an image of the defendants' server. The filter team examined the seized materials as the first layer of review, segregated potentially privileged information based on a list of terms supplied by the defendants' counsel, and later handled privilege disputes so that the investigative team did not see the materials at issue.

Once the government received the image of the server, an agreed order was entered to govern searches of the server. The government has since electronically filtered out irrelevant and privileged materials from both the server and the hard copy seizure. By early 2014, the government produced electronic copies of nearly all the hard copy materials it had seized to the defendants. As a result of the search, the

government collected approximately 1.6 million documents. The government continued its investigation after the search and did not seek an indictment in this court until April 2019, which was later superseded in August 2019.

III.

The Fourth Amendment governs search warrants. It provides, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Essentially, the Fourth Amendment requires that warrants: (1) Be issued by a neutral, detached magistrate, (2) contain a particularized description of the place to be searched and persons or things to be seized, (3) be supported by oath or affirmation, and (4) be based on probable cause. *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994).

An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Although there is not a precise definition of probable cause, courts have understood that "it exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be

found in a particular place."[4]  *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004).  Therefore, courts must consider a number of factors in a practical manner, "including the veracity and basis of knowledge of persons supplying hearsay information."  *Gates*, 462 U.S. at 238 (adopting a totality of the circumstances analysis to evaluate tips from informants); *see also United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004).  Ultimately, great deference should be given to a magistrate's determination finding probable cause.  *Spinelli v. United States*, 393 U.S. 410, 419 (1969).  The Fourth Amendment has a strong preference for searches conducted pursuant to a warrant, thus the Supreme Court has held it is inconsistent to invalidate a warrant by "interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."  *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

Although "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," *United States v. Leon*, 468 U.S. 897, 906 (1984), the Supreme Court adopted the exclusionary rule "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures."  *United States v. Calandra*, 414 U.S. 338, 347 (1974).  In *Leon*, the Supreme Court established the good-faith exception to the exclusionary rule.  The Supreme Court found that

---

[4]  I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

"suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  468 U.S. at 918.

The *Leon* Court further noted that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."  *Id.* at 922.  The *Leon* Court observed that while searches authorized by a warrant "will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search . . . it is clear that in some circumstances the officer will have no reasonable grounds for believing the warrant was properly issued."  *Id.* at 922–23.

The Court identified four circumstances in which the good-faith exception would not apply:  (1) "[I]f the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role"; (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient" that the executing officers "cannot reasonably presume it to

be valid." *Id.* at 923. Consideration of the *Leon* exception "is a less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place." *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002). The Supreme Court has consistently explained that the exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations" and that exclusion is appropriate only when "the deterrence benefits of suppression . . . outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). The *Davis* Court clarified that the key to this balancing analysis is the relative culpability of the officer's conduct:

> The basic insight of the *Leon* line of cases is that the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. *But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.*

*Id.* at 238 (emphasis added).

> *A. The government's omission of impeachment information in the Search Warrant affidavit was not material and there is no evidence of intentionality.*

The defendants first assert that the government committed a *Franks* violation by omitting from its warrant application that its source had independently filed a *qui tam* action against the defendants for substantially similar activity. *See Franks v.*

*Delaware*, 438 U.S. 154 (1978). A defendant may bring a *Franks* challenge either when an affidavit contains a false statement or when the affiant has omitted material information. *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). In order to obtain a *Franks* hearing, the defendants must: (1) Make a substantial preliminary showing of an intentional or reckless omission; and (2) demonstrate that the omission was essential to the probable cause determination. *Franks*, 438 U.S. at 155–56; *see also Lull*, 824 F.3d at 114–15 (holding that the standard is preponderance of the evidence). Thus, a defendant must establish both intentionality and materiality. *Miller v. Prince George's Cty.*, 475 F.3d 621, 627–28 (4th Cir. 2007) (holding that for the first prong, suppression is not warranted if the officer acted with negligence or committed an innocent mistake).

This evidence "must be more than conclusory" and "must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. Allegations must be supported through affidavits or sworn witness statements, or an explanation of why these cannot be provided. *Id.* Challenged affidavits are presumed valid. *Id.* The defendant's burden in showing intent is greater in the case of an omission because "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (holding that *Franks* protects against omissions designed to mislead the magistrate).

In assessing materiality, the court must "insert the facts recklessly [or intentionally] omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." *Miller*, 475 F.3d at 628; *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016) ("An omission is material if it is necessary to the neutral and disinterested magistrate's finding of probable cause."). In determining the role of the omitted information, the court must apply the totality of the circumstances test of *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In the context of informants, it is notable if the source supplies much of the factual basis for the affidavit and the reviewing court later finds the source unreliable. *See Lull*, 824 F.3d at 118.[5] If the court finds the source inherently unreliable, it must excise her statements from the affidavit. *See id*. The omission is material if nothing in the affidavit supports probable cause without her statements. *Id.* at 120. However, omitted information that is potentially relevant, but not dispositive, is not enough to warrant a hearing. *Colkley*, 899 F.2d at 301. In the end, there is no *Franks* violation

---

[5] Generally, when an effort is made to establish probable cause for the issuance of a search warrant based on hearsay from an informant, "it is necessary to consider all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information. The degree to which an informant's story is corroborated may also be an important factor." *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004). Even so, "[t]here is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible. Whether subsequent corroboration is necessary must be determined in the light of the totality of the circumstances presented by the particular set of facts." *DeQuasie*, 373 F.3d at 519.

if "the corrected warrant affidavit establishes probable cause." *Miller*, 475 F.3d at 628.

In *Lull*, the Fourth Circuit found that an officer recklessly omitted facts related to the credibility of his confidential informant; specifically, the informant tried to steal police money after completing the controlled buy with the defendant. 824 F.3d at 111–13. The Fourth Circuit held that the information was material because it significantly undermined the reliability of the informant. *Id*. The same is not true here, because inclusion of the source's status as a *qui tam* relator does not make her inherently unreliable. While the source might have a financial interest in the defendants being found liable in her FCA claim, it does not necessarily follow that she has an incentive to be untruthful. It is equally likely that the source has an increased incentive to provide truthful and valid information to support her claim in order to recognize any financial gain in the future.

The Fourth Circuit has recognized that an informant's personal interest can create "a strong motive to supply accurate information." *United States v. Miller*, 925 F.2d 695, 699 (4th Cir. 1991).[6] The source's personal interest in the

_____

[6] The defendants cited two cases during oral argument that are easily distinguishable. The first case involved an informant that was being paid for his services, with only minimal police corroboration of his tip before seeking the warrant. *United States v. Clark*, 935 F.3d 558, 565–66 (7th Cir. 2019). Here, the source's financial incentive can only be realized after a successful FCA suit and that civil suit has been stayed pending the resolution of this criminal prosecution. It is also apparent that the government's investigation lasted at least eight months before it sought the warrant. The second case

investigation of these defendants also stands in stark contrast to many of the potential interests of informants. *See, e.g.*, *Jaben v. United States*, 381 U.S. 214, 224 (1965) (noting that in a probable cause context the credibility of informants in drug cases and other garden-variety street crimes "may often be suspect" as opposed to classic white-collar crimes like tax evasion). In fact, the Fourth Circuit has found that an informant has higher credibility when they "meet[] face-to-face with an officer [and] provide[] the officer with an opportunity to assess his credibility and demeanor and also expose[] himself to accountability for making a false statement." *DeQuasie*, 373 F.3d at 523.

Even if I entertain some doubt as to her motives, the level of detail provided in her description of alleged wrongdoing by the defendants and their employees — along with supportive documents and recordings — clearly demonstrates that she personally observed many of the events due to her position in the defendants' organization. Her tip is, therefore, entitled "to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. While inclusion of the source's potential financial interest might have been relevant for the magistrate judge to conduct a more thorough totality-of-the-circumstances analysis as to her reliability, I do not believe the omission is material. Furthermore, the defendants have not shown evidence of

---

involved a fee arrangement for a witness to testify at trial, in which the Fourth Circuit set out procedural hurdles for such testimony to be permitted at trial. *United States v. Levenite*, 277 F.3d 454, 462–63 (4th Cir. 2002).

any intention by the government to deliberately mislead the magistrate judge in omitting the information.

The court must also be cautious about importing the panoply of *Giglio* protections from trial practice into warrant application proceedings. *See Colkley*, 899 F.2d at 302–03 (discussing refusal to import *Brady* right to warrant process). The *Giglio* rule, like the *Brady* rule, derives from due process concerns and is designed to ensure fair criminal trials. *Giglio v. United States*, 405 U.S. 150, 155 (1972). A defendant is cloaked with the presumption of innocence at trial, but the probable cause determination for a search warrant does not involve a definitive adjudication of innocence or guilt. As in *Colkley*, because the consequences of a search are less severe and irremediable than the consequences of an adverse criminal verdict, a duty to disclose potential impeachment information appropriate in the setting of a trial may be less compelling in the context of an application for a warrant. 899 F.2d at 302–03.

> B. The Search Warrant sufficiently incorporated
> the Attachments to satisfy the Fourth Amendment's
> particularity requirement.

The defendants next claim that the government did not properly attach or incorporate its affidavit to the Search Warrant, so that the warrant was facially invalid and the evidence seized during the search must be suppressed. *See Groh v. Ramirez*, 540 U.S. 551 (2004). The defendants rely upon the Supreme Court's

holding in *Groh* that a search warrant is facially invalid if it fails to describe the persons or things to be seized, even if the particularized description was provided in the search warrant application. *Id.* at 557. The *Groh* Court reasoned that the Fourth Amendment requires particularity in the warrant rather than in the supporting documents. Yet the defendants ignore the second part of *Groh*'s holding. The search warrant is facially invalid *only* if it does not incorporate the particularized description through incorporation by reference or does not accompany the warrant during its execution because it is under seal. *Id.* at 557–58.

Some circuits require both incorporating language in the warrant and attachment of the supporting documents during its execution. The Fourth Circuit requires either incorporation by reference or attachment. *United States v. Hurwitz*, 459 F.3d 463, 470–71 (4th Cir. 2006). It is clear from the face of the warrant that Attachments A and B are incorporated by reference, and it also appears that they were attached to the warrant during its execution. In addition, the entire affidavit is explicitly incorporated by reference into the Search Warrant application, although both documents were under seal and not viewable by the defendants on the date of the search. The thrust of the defendants' argument is that the Search Warrant is facially invalid because it does not incorporate by reference or attach the entirety of the agent's affidavit nor the warrant application that lists the criminal statutes being

investigated. In other words, Attachment B's "things to be seized" is not anchored to the criminal violations being investigated.

The defendants are correct that neither the affidavit nor the application were attached to the warrant during the search. The government claims that both documents were available to agents during the search to ensure that they could reference it and comply with its probable cause and particularity limitations. U.S. Resp. Opp'n Mot. Suppress, Petri Decl. 2, ECF No. 276-1. Yet the rationale behind accompaniment of the supporting documents is for *the subject of the search* to be able to inspect it rather than the agents executing the search. *See Groh*, 540 U.S. at 557–58. Nonetheless, the explicit language of *Groh* does not require incorporation of the entire affidavit. The *Groh* Court simply required a warrant to "incorporate other documents by reference" or for the "affidavit or the application . . . [to] accompany the warrant." *Id.* at 558. The Fourth Circuit also explicitly held in *Hurwitz* that a search warrant's cross-reference to the attachment of the supporting affidavit is sufficient to satisfy the particularity requirement. *Hurwitz*, 459 F.3d at 470–71 (noting that the contested attachment identified the items to seized).

Above all, the Fourth Amendment's particularity requirement is separate from the probable cause requirement, which is the real crux of the defendants' argument that Attachment B's "things to be seized" could not independently tethered to specific criminal violations within the four corners of the attachments or the warrant.

The defendants make this assertion even though the criminal violations were listed in the affidavit and application and thereby viewable by the magistrate judge, albeit not immediately viewable by the defendants during execution of the warrants. This is an extremely nuanced point without any authority to bolster it.

There is no requirement in *Groh* that the subject of the search be able to inspect the suspected criminal violations and probable cause finding detailed to, and adopted by, the magistrate. The Supreme Court in *Groh* merely addressed the particularity requirement as to the "things to be seized" and the level of detail required. As a result, the defendants' argument goes far beyond the issues decided in *Groh* and its reliance on the case is misplaced. 540 U.S. at 557– 59.

> *C. The Magistrate Judge's probable cause*
> *Determination had a substantial basis*
> *that supported Attachment B's "Things*
> *to be Seized."*

The defendants also argue that the Search Warrant is overly broad and without sufficient probable cause to permit the extent of the seizure. When a defendant challenges the magistrate judge's finding of probable cause based on grossly insufficient evidence to warrant the level of intrusion, such an allegation is best analyzed under the third *Leon* exclusion. *See United States v. Wellman*, 663 F.3d 224, 229 (4th Cir. 2011). As such, the question is whether the warrant application is so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable.  *See id.*  In essence, whether there was a "substantial basis for

the [magistrate's] decision."  *Hurwitz*, 459 F.3d at 473.

In my review of the affidavit in this case, I find that it bears many of the indicia

of a strong search warrant application.  Agent Petri's affidavit describes an extensive

conspiracy that touched numerous states and spanned across multiple levels of the

defendants' command structure.  The affidavit sets forth a thorough explanation of

buprenorphine and its prior legal status as an orphan drug, which gave the defendants

exclusive control over buprenorphine for a period of seven years.  This explanation

sets forth the motive for the entire scheme.  Over sixteen pages, the affidavit lays out

the facts giving rise to probable cause.  It is also apparent that the affidavit was not

a hastily assembled document based on a single tip, but was the product of at least

an eight-month investigation to corroborate the information provided by the source.

The affidavit carefully links the probable cause to the defendants'

headquarters and  items to be seized.  The affidavit explains that the Richmond

headquarters is a centralized location for the storage media, including the

defendants' server, and the source had provided documents demonstrating use of e-

mail and other electronic formats to carry out the scheme.  *See United States v.

Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (agreeing with other circuits "that the

nexus between the place to be searched and the items to be seized may be established

by the nature of the item and the normal inferences of where one would likely keep

such evidence"). It was eminently reasonable to suspect that a business entity suspected of committing fraud would store evidence at its headquarters.

As for Attachment B and its categorization of the things to be seized, the affidavit provides a substantial basis to conclude that the defendants' headquarters and their electronically stored information might include records communicating their knowledge and endorsement of the scheme. Attachment B also explicitly limited the search to corporate-issued electronics, so that employee's personal cell phones or laptops would not be seized or searched. Attachment B seeks out a relatively narrow set of records, documents, and correspondence in physical or electronic form. Specifically, Attachment B lists the defendants' records related to: Suboxone and/or Subutex; a cross-section of the defendants' employees that would likely be associated with the advertising and sale of the substances, executive decisionmakers, or human resource officers who might have knowledge about the incentive system for salespeople; and the computers and storage media likely used to communicate about the violations. As such, Attachment B's enumerated items hardly convert the Search Warrant into a general warrant without limits as claimed by the defendants.

Akin to the argument rejected in *Hurwitz*, the defendants assert that there was insufficient probable cause for the government to seize all of the files because the supporting affidavit was primarily focused on the Appalachian region and Suboxone

and Subutex.  As the Fourth Circuit noted in *Hurwitz,* there "is no requirement that the government have evidence relating to each and every [file] to support the seizure of all of the files."  *Hurwitz*, 459 F.3d at 473.  The Fourth Circuit also held in *United States v. Oloyede* that:

> where there is probable cause to believe that a business is "permeated with fraud," either explicitly stated in the supporting affidavit or implicit from the evidence therein set forth, a warrant may authorize the seizure of all documents relating to the suspected criminal area but may not authorize the seizure of any severable portion of such documents relating to legitimate activities.

982 F.2d 133, 141 (4th Cir. 1992) (noting that there were no severable portions in the defendant's immigration practice, so that non-relevant matters, if any, would be a *de minimis* portion of his activities).

I am not convinced that the Search Warrant is overbroad as compared to the provided probable cause.  The affidavit lays out a wide-ranging conspiracy that implicates large portions of the defendants' corporate structure and across numerous states, while leaving open the possibility that other regions may be affected by the defendants' misleading marketing practices.  The magistrate judge, therefore, had a substantial basis in authorizing the search of the defendants' headquarters and its physical and electronic files to determine the actual scope and contours of the conspiracy.  Upon examining the totality of this information before the magistrate judge, the affidavit supporting the warrant was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Relatedly, Attachment B's list of property to be seized is sufficiently particular and reasonably linked to the probable cause portion of the affidavit. The Fourth Amendment "requires that a warrant be no broader than the probable cause on which it is based." *Hurwitz*, 459 F.3d at 473. This requirement "ensures that the search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause." *Oloyede*, 982 F.2d at 138. The Fourth Amendment's requirement for particularity "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

The particularity requirement is satisfied when an officer in possession of a search warrant describing a particular place to be searched can reasonably ascertain and identify the intended place to be searched and the items to be seized. *Steele v. United States*, 267 U.S. 498, 503 (1925). The particularity requirement limits and authorizes the search for and seizure of evidence relating to the alleged criminal conduct — in this case, conspiracy, health care fraud, misbranded drugs, and false claims — as found in the items specifically enumerated in Attachment B. *See Andresen v. Maryland*, 427 U.S. 463, 480 (1976).

At its heart, "the test for the necessary particularity is a pragmatic one" with a "practical margin of flexibility," so that the required degree of specificity will vary

depending on the circumstances. *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979). For example, "[u]nlike with murder weapons or drugs, when an offense concerns the use of hard copy or electronic files and documents a court cannot be sure which files will be relevant and the warrant may not be able to state as specifically what should be searched and seized." *United States v. Sassani*, No. 97-4011, 1998 WL 89875, at *5 (4th Cir. Mar. 4, 1998) (unpublished) (holding that less particularity is required in such warrants so long as the warrant otherwise limits the officers' discretion to the alleged criminal violations). The affidavit in this case alleges fraudulent activity over a large geographic area, by numerous actors within the defendants' organizations, and the clear use of electronic means to further the scheme. Attachment B's description of the things to be seized is appropriately limited to the defendants' related products, internal compliance, the personnel that would have been involved or should have known about the activity, and other items related to the alleged scheme. In so doing, the Search Warrant satisfies the particularity requirement as much as it could under the circumstances.

### D. The government's search did not exceed the scope of the warrant.

Finally, the defendants contend that the government exceeded the scope of an already broad warrant through how it executed the Search Warrant and how it has since retained the seized information. In determining whether a search or seizure exceeds the scope of a warrant, the inquiry "is one of practical, rather than

hypertechnical, accuracy." *United States v. Kimble*, 855 F.3d 604, 611 (4th Cir. 2017). The fundamental legal principals involved in interpreting the validity of a search warrant also apply to assessing its scope. *United States v. Srivastava*, 540 F.3d 277, 290 n.16 (4th Cir. 2008); *see also United States v. Williams*, 592 F.3d 511, 522 (4th Cir. 2010) ( "[T]he scope of a search conducted pursuant to a warrant is defined objectively by the terms of the warrant and the evidence sought, not by the subjective motivations of an officer.").

Although the defendants demand blanket suppression and denounce the search of their headquarters as an impermissible general search that exceeded the scope authorized by the warrant, the defendants only identify two categories of items as outside the warrant's scope. The first being the collection of their employees' corporate-issued electronics, and the second being their employees' personal data that was stored on the corporate-issued electronics. The government questions whether the defendants have standing to contest the seizure of their employee's corporate-issued electronics. I disagree. I find the defendants have standing because the cellphones and laptops are corporate property clearly owned by the defendants, even if they are provided to their employees for work-related activities.

However, the defendants cannot have it both ways and claim that the employees were personally searched when the corporate-issued electronics were seized. The magistrate judge found sufficient probable cause as to these items, and

Attachment B explicitly limits seizure to corporate electronics and excludes personal electronics. The agent's command to the defendants' employees to leave their corporate-issued electronics in their offices thus fell well within the scope of the warrant. *See Owens ex rel. Owens v. Lott*, 372 F.3d 267, 276 (4th Cir. 2004) (holding that "as long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant in the criminal activity occurring there," the executing agents may conduct a search of the individual limited by the parameters of the warrant).

As for the defendants' second basis, they essentially contend that the breadth of the search justifies blanket suppression of all items seized. I am not persuaded by the defendants' repeated emphasis on the number of items seized nor the highly sensitive nature of some of the employee's personal data collected from the corporate-issued electronics. The personal data was only collected because their employees chose to store private information on the defendants' corporate property. I am also not persuaded by the defendants' arguments about the quality and quantity of that private information. The government could not have anticipated that the defendants' employees would store such private information with their employers, and the government already agreed to segregate out irrelevant information in the agreed order entered shortly after execution of the warrant.

The government concedes that its seizure of materials about a drug unrelated to Suboxone and Subutex may have been outside the scope of the warrant, but "[t]he exclusionary rule does not compel suppression of evidence properly covered by a warrant merely because other material not covered by the warrant was taken during the same search." *United States v. Borromeo*, 954 F.2d 245, 247 (4th Cir.), *cert. denied*, 505 U.S. 1212 (1992). Most importantly, "[b]lanket suppression due to an overly broad general search is only justified when officers exhibit flagrant disregard for the terms of the warrant." *United States v. Chandia*, 514 F.3d 365, 374 (4th Cir. 2008). In other words, when searching officers engage in indiscriminate fishing for evidence and wholesale seizure. *See United States v. Robinson*, 275 F.3d 371, 382 (4th Cir. 2001). For example, if the seizing agents in this case had taken things of value such as office supplies or petty cash that clearly could not have been related to the healthcare fraud scheme. *See id.*

The defendants have not provided any probative indicia of flagrant disregard or bad faith, and the government has provided significant evidence of good-faith steps taken both during and after the search to work with the defendants and their counsel. *See United States v. Uzenski*, 434 F.3d 690, 707–08 (4th Cir. 2006) (holding that without probative indicia of flagrant disregard or bad faith, it was impossible to conclude that the officers' seizure of certain items outside the warrant transformed the particularized search into a general, unrestricted fishing expedition).

The defendants have also not shown that a significant proportion of the evidence seized was outside the scope of the warrant or even capable of being segregated during execution of the warrant. *See United States v. Squillacote,* 221 F.3d 542, 556 (4th Cir. 2000) (the "extraordinary remedy of blanket suppression" has applied only when officers have seized "large quantities of evidence clearly not within the scope of the warrant"). The employees' seized personal data likewise appears *de minimis* as compared to the relevant materials seized. After comparing the scope of the warrant with the list of the items actually seized, there is no basis for concluding that the officers flagrantly disregarded the terms of the warrant in this case.

Within their argument about scope, the defendants also complain that the government's retention of evidence has been unreasonable because they have not received any confirmation that irrelevant materials have been segregated in the government's internal discovery database. The defendants also assert, without citing any supportive authority, that each internal database search that includes the irrelevant evidence constitutes a new search in violation of the Fourth Amendment. I disagree. The government's use of a filter team to remove privileged materials, as well as its efforts to flag and electronically filter out irrelevant materials — such as the employees' private data — is adequate. The government has satisfied its obligations and appears to have conducted a timely and reasonable review of the seized documents. *See United States v. Manafort*, 323 F. Supp. 3d 795, 808–09

(E.D. Va. 2018) (rejecting a similar argument because the record demonstrated the government's efforts to conduct a timely and reasonable review through the use of filter teams and relevance reviews).

IV.

For the foregoing reasons, it is **ORDERED** that the defendants' Motion to Suppress, ECF No. 261, is DENIED.

ENTER:  March 25, 2020

/s/  JAMES P. JONES
United States District Judge