IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:19CR00016 |
| | ) | |
| INDIVIOR INC., ET AL., | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

OPINION AND ORDER
DENYING MOTION TO DISMISS

*ARGUED:* Albert P. Mayer, Assistant United States Attorney, Abingdon, Virginia, for United States; James P. Loonam, JONES DAY, New York, New York, for Defendants. ON BRIEF: Daniel P. Bubar, First Assistant United States Attorney, Randy Ramseyer, Kristin L. Gray, Joseph S. Hall, Garth W. Huston, Janine M. Myatt, and Carol L. Wallack, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, Abingdon, Virginia, for United States; David Morrell, Deputy Assistant Attorney General, Matthew J. Lash, Charles J. Biro, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, CONSUMER PROTECTION BRANCH, for United States; Peter J. Romatowski, James R. Wooley, Dia Rasinariu, and Katherine K. Mizelle, JONES DAY, for Defendants; Thomas J. Bondurant, Jr., and Jennifer S. DeGraw, GENTRY LOCKE, Roanoke, Virginia, for Defendants.

The defendants in this criminal prosecution have moved to dismiss the Superseding Indictment, as well as reiterated their prior request that I inspect grand jury transcripts *in camera*. The government retorts that the defendants' arguments are matters for the jury, and reconsideration of the court's rejection of the previous transcript request is not warranted. For the following reasons, I will deny the defendants' Motion to Dismiss.

I.

The defendants, Indivior Inc. and its parent company, Indivior PLC, are alleged to have deceived health care providers and benefit programs into believing that the prescription medication Suboxone® (buprenorphine and naloxone) sublingual film ("Suboxone Film") is safer and less susceptible to diversion and abuse than other similar drugs. The Superseding Indictment charges the defendants with: (1) one count of conspiracy to commit mail, wire, and healthcare fraud, all in violation of 18 U.S.C. § 1349; (2) one count of healthcare fraud, in violation of 18 U.S.C. §§ 2 and 1347; (3) four counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341; and (4) twenty-two counts of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343.

The defendants make four arguments in their second dismissal motion. First, the defendants' use of their Here to Help program to refer patients to Doctor A does not constitute wire fraud. Second, the allegation that the defendants aided and abetted unindicted physicians in their careless and clinically unwarranted prescribing practices is prejudicial surplusage, as is the introductory clause relating to their marketing of Suboxone to these careless prescribers. Third, the conspiracy count and the substantive health care fraud count are duplicitous because they allege multiple schemes and crimes. Finally, the defendants ask me to reconsider their

request that I inspect *in camera* transcripts of the prosecutors' colloquy with the grand jury prior to return of the Superseding Indictment.

The government responds that the Superseding Indictment tracks the language of the relevant statutes and lists the essential facts, so that the issue of whether the defendants' conduct constitutes wire fraud is a question for the jury. As for the surplusage issue, the government argues that the careless prescriber scheme is evidence of the defendants' intent to defraud. The government also explains that the defendants' wire fraud activity assisted the overall scheme rather than any conduct by Doctor A. The government next contends that there is not a duplicity problem, as the conspiracy count and health care fraud count include the numerous methods used to further the overall scheme. The government concludes that the defendants have already litigated the grand jury transcript issue, and they have not presented any new information that requires a departure from the court's previous ruling.

II.

When a defendant challenges the sufficiency of an indictment prior to the verdict, the court should apply a heightened scrutiny to ensure that every essential element of an offense has been charged. *See United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009).[1] The indictment "must contain the [essential] elements of the

---

[1] I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *Id.*; *accord United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). However, any general description based on the statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) *see also Russell v. United States*, 369 U.S. 749, 765 (1962) (noting that an indictment must "descend to particulars" where the definition of an offense includes generic terms). Thus, the indictment must also contain a "definite written statement of the *essential facts* constituting the offense charged." Fed. R. Crim. P. 7(c)(1) (emphasis added). In ruling on a defendant's motion to dismiss the indictment, the court must accept all factual allegations in the indictment as true. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952).

*A. The Wire Fraud Counts are Sufficient.*

The defendants first challenge the sufficiency of the wire fraud counts relating to the defendants' referral of patients to Doctor A through their Here to Help program, which alleges both principal and accomplice liability. To survive such a challenge, the Indictment must properly charge that the defendants devised and intended to devise a scheme to defraud and used wire communications in furtherance

- 4 -

of the scheme. *United States v. Wynn*, 684 F.3d 473, 477 (4th Cir. 2012). The misuse of wire communications forms the overt act. *See United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005); *United States v. Afsharjavan*, No. 1:15-CR-144 (JCC), 2015 WL 5638099, at *2 (E.D. Va. Sept. 24, 2015). The "scheme," by contrast, forms part of the *mens rea* element. *Ramirez*, 420 F.3d at 144. The scheme alleged may also extend beyond the direct transaction that forms the overt act of wire fraud. *Afsharjavan*, 2015 WL 5638099, at *2; *United States v. Bajoghli*, 785 F.3d 957, 963 (4th Cir. 2015) ( "[E]vidence of transactions and conduct not charged is relevant to proving the existence of and the boundaries of the conspiracy or scheme"). Finally, the indictment must allege a specific intent to defraud as an essential element of the wire fraud counts. *See Kingrea*, 573 F.3d at 191.

As for an aiding and abetting theory, "[a]iding and abetting means to assist the perpetrator of the crime." *United States v. Williams*, 341 U.S. 58, 64 (1951). In order to obtain a conviction for aiding and abetting, the government need not prove the actual identity of the principal, "provided the proof shows that the underlying crime was committed by someone." *United States v. Horton*, 921 F.2d 540, 543 (4th Cir. 1990). The government need only prove "that the substantive offense had been committed by someone and that the defendant aided and abetted him." *Id.* at 544.

The defendants' challenge to the specified wire fraud counts is two-fold. It is primarily centered on the aiding and abetting theory of liability associated with the

unindicted physicians' careless and clinically unwarranted prescribing practices. Secondarily, the defendants assert that the facts described in that segment of the Superseding Indictment do not constitute wire fraud. The sufficiency issue is analyzed under the forgiving framework of Rule 7 of the Federal Rules of Criminal Procedure, in which the essential question is whether the indictment tracks the statute and lays out essential facts that correspond with the elements of the offense.

The defendants make a point that it is not clear from the Superseding Indictment how they aided and abetted wire fraud and why it is included as a theory of liability. The government's description of its wire fraud theory in its brief does not clarify the matter, as it does not comport with accomplice liability and instead uses "aided and abetted" only in a colloquial sense. Regardless, the elements are sufficiently described, and the essential facts are listed; the theory of liability is now a matter for the jury. As for the illegality argument for the principal theory of liability, the government is correct that "[t]here is no equivalent to a summary judgment motion in criminal law." *United States v. Witasick*, No. 4:07-CR-00030, 2008 WL 1924023, at *2 (W.D. Va. Apr. 28, 2008). The issue of whether the defendants committed wire fraud, therefore, is a question for the jury as the Superseding Indictment is sufficiently pled. *See United States v. Shabbir*, 64 F. Supp. 2d 479, 481 (D. Md. 1999) (holding that a court should not grant a motion to

dismiss where defendant's "legal contentions are inextricably bound up with the facts of the case").

> *B. The Superseding Indictment's Repetition that the Physicians' Prescribing Practices was "Careless and Clinically Unwarranted" is Not Prejudicial Surplusage.*

The defendants' related argument is that the repeated reference throughout the Superseding Indictment to their continued relationship with physicians that had careless and clinically unwarranted prescribing practices is prejudicial surplusage. The defendants also challenge the inclusion of their marketing practices, because they claim there is no associated allegation that the conduct involved false or fraudulent statements. Federal Rule of Criminal Procedure 7(d) permits a pretrial motion requesting the court to strike surplusage from an indictment or information.

"The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979); *see also United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (holding that a court may exercise discretion to strike surplusage "only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial"). But "information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the

defendant was prejudiced by its inclusion." *United States v. Hallman*, 578 F. App'x 209, 212 (4th Cir. 2014) (unpublished).

The defendants specifically point to paragraph 31 of the Superseding Indictment, which states, in pertinent part, that the defendants did

> devise a scheme and artifice to defraud and to obtain money and property from health care benefit programs by means of materially false and fraudulent pretenses, representations, and promises, by (A) making materially false and fraudulent statements and representations to health care providers to induce them to prescribe, dispense, and recommend Suboxone Film; (B) preparing and causing to be prepared, and shipping and causing to be shipped, materially false and fraudulent marketing materials promoting Suboxone Film; (C) making materially false and fraudulent statements and representations to and relating to state Medicaid administrators and others to promote Suboxone Film; and (D) *marketing Suboxone Film to health care providers to be prescribed and dispensed in a careless and clinically unwarranted manner*.

Superseding Indictment ¶ 31, ECF No. 115 (emphasis added). This language, like the entirety of the introductory section, is then incorporated into each substantive count. The defendants point to subsection (d) of paragraph 31 in particular, and its use of the "careless and clinically unwarranted" language with specific examples throughout the allegations, as prejudicial because it does not allege fraud and is instead an improper backdoor that may permit the government to introduce other acts evidence at trial. *See* Fed. R. Evid. 404(b). The defendants also note its potentially misleading interaction with the wire fraud counts, in which the government appears to allege that the defendants aided and abetted the unindicted physicians in their careless and clinically unwarranted prescribing practices.

- 8 -

Although the language's interaction with the aiding and abetting theory of liability in the wire fraud counts is opaque at this stage, it is not surplusage that is prejudicial to the defendants. The physicians are not being charged in the Superseding Indictment as coconspirators and the defendants have not actually been charged with aiding and abetting these physicians' potential health care fraud. Even so, the government has sufficiently established the relevance of these doctors' prescribing practices as evidence of the defendants' intent to defraud, as well as its relation to the defendants' alleged health care fraud scheme for purposes of evaluating the Superseding Indictment. Furthermore, the defendants have not been charged with bribery or other crimes for some of their marketing practices that include free lunches and other perks to these physicians, but this evidence nevertheless could be relevant to the charged conduct as a manner and means to further the defendants' conspiracy.

Consequently, the "careless and clinically unwarranted" language appears highly relevant, along with the discussion of the defendants' marketing practices, specifically their efforts to influence these careless prescribers who composed the bulk of their purchasers to Suboxone Film. These actions might not be based in fraud, but they are sufficiently pled as methods used by the defendants to actualize the defendants' healthcare fraud scheme. Because I find that these matters are relevant, I need not determine whether they are prejudicial to the defendants for

purposes of the surplusage analysis. *See Williams*, 445 F.3d at 733. In any event, the language is not prejudicial because it involves uncharged conduct on a similar footing with the charged frauds and is probative of the underlying healthcare fraud scheme and their intent to defraud. *See id.* (holding that reference to uncharged murder likely committed by the defendant was not surplusage in a prosecution for possession of a firearm by a prohibited person, because it was relevant to, and highly probative of, the underlying firearm charge).[2]

> *C. Neither the Conspiracy Count nor the Health Care Fraud Count Internally Allege Multiple Offenses to Create a Duplicity Problem.*

The defendants next argue that the Superseding Indictment's manner and means discussion in the conspiracy count and the healthcare fraud count encompass multiple crimes. Federal Rule of Criminal Procedure 12(b)(3)(B)(i) permits a pretrial motion challenging "a defect in the indictment," including "joining two or more offenses in the same count (duplicity)." An indictment is duplicitous if "it charges two offenses in one count, creating the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." *United States v. Robinson*, 855 F.3d 265, 269 (4th Cir. 2017). But "[a]n indictment

---

[2] My ruling as to the relevancy and prejudicial nature of these issues is limited to whether they should be struck as surplusage from the Superseding Indictment. I am not yet considering whether the corresponding evidence is admissible under the Federal Rules of Evidence.

is not duplicitous if it includes in one count multiple ways of committing a single offense." *Id.* at 270; *see also* Fed. R. Crim. P. 7(c)(1) (expressly permitting a single count to allege that an offense was committed by "one or more specified means"); *Braverman v. United States*, 317 U.S. 49, 54 (1942) (holding that "the allegation in a single count of a conspiracy to commit several crimes is not duplicitous").

"[A] single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." *United States v. Jeffers*, 570 F.3d 557, 567 (4th Cir. 2009); *but see Witasick*, 2008 WL 1924023, at *1 (holding that a broad conspiracy with a single overarching goal becomes duplicitous if it groups together unrelated acts which occurred at largely different times). "Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988); *see also United States v. Foggo*, No. 1:08CR79 (JCC), 2008 WL 2777009, at *6 (E.D. Va. July 14, 2008) (holding that, in determining duplicity, a court may consider "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals").

In *United States v. Patel*, 720 F. App'x 698, 700 (4th Cir. 2018) (unpublished), the Fourth Circuit found that a conspiracy count was not duplicitous because the indictment described one conspiracy involving the same distributor, products,

people, and overarching business model. The Fourth Circuit also stressed that "the question whether the evidence shows a single [conspiracy] or multiple conspiracies is for the jury . . . [and] the finding of a single conspiracy must stand unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find." *Id.* (quoting *United States v. Urbanik*, 801 F.2d 692, 695 (4th Cir. 1986)); *see also United States v. Roberts*, 262 F.3d 286, 294 (4th Cir. 2001) (holding that the government bears the burden at trial of "proving a single conspiracy involving one overall agreement or one general business venture).

Even if a conspiracy count is found to be duplicitous, it should not be dismissed unless the duplicity prejudices the defendant. *United States v. Kamalu*, 298 F. App'x 251, 254 (4th Cir. 2008) (unpublished). There is no prejudicial duplicity if the indictment, fairly interpreted, alleges a "continuing course of conduct [] during a discrete period of time." *United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006). In general, it is "black letter law that duplicitous indictments can be cured through appropriate jury instructions." *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010).

On its face, Count One of the Indictment fairly alleges facts that could establish a single, continuous healthcare fraud conspiracy with multiple manners and means to fulfill a primary outcome; namely, moving the consumer market to Suboxone Film through whatever means necessary to delay and reduce eventual

generic competition. The defendants' alleged false statements to health care providers to induce them to switch to their product, their alleged false marketing materials mailed to physicians to promote the switch, the alleged false representations to state Medicaid administrators, and their continued dealings with physicians they had labelled as "careless and clinically unwarranted" prescribers are conceivably related marketing methods to actualize their ultimate goal.

The fact that the Superseding Indictment does not establish a perfect temporal overlap between some aspects of the conspiracy does not necessarily make them separate conspiracies. The same is true for the substantive healthcare fraud count. At trial, the government may introduce evidence showing continued contact and planning through the alleged gaps, or there may be other evidence from which the jury could find the existence of a continuing course of conduct. If the government fails to introduce sufficient evidence, then the defendants may raise the matter again and it can be addressed through jury instructions or some other curative vehicle. Ultimately, the "line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw." *United States v. Moazzeni*, 908 F. Supp. 2d 748, 751 (E.D. Va. 2012).

### D. Reconsideration of the Grand Jury Transcript Issue is Not Required.

The defendants have once again moved for *in camera* review and possible release of the government's colloquy with the grand jury, pursuant to Rule

6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure.  The defendants have not styled this renewed request as a motion for reconsideration, but that is the practical effect.  *See Afsharjavan*, 2015 WL 5638099, at *1 (holding that courts must rely on Rule 59(e) of the Federal Rules of Civil Procedure because the Federal Rules of Criminal Procedure do not define the standard for reconsideration   I find that the defendants have not shown an intervening change in controlling law, presented new evidence, or explained how the court's previous order was a clear error of law or caused a manifest injustice.  *See Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).

### III.

For the foregoing reasons, it is **ORDERED** that the defendants' Motion to the Dismiss the Superseding Indictment, ECF No. 252, is DENIED.

ENTER: March 31, 2020

*/s/  James P. Jones*
United States District Judge