*Addendum A to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*

**Compliance Measures and Certifications**

## ADDENDUM A

## COMPLIANCE MEASURES AND CERTIFICATIONS

INDIVIOR in connection with its US operations agrees to comply with the requirements set forth below and to maintain the policies and procedures described below for the Term of the Agreement:

## I. COMPLIANCE MEASURES

A. INDIVIOR will establish and maintain compliance policies and procedures designed to prevent, detect and correct violations of the applicable Risk Evaluation Mitigation Strategy ("REMS") program approved by the Food and Drug Administration ("FDA"), the Food Drug and Cosmetic Act ("FDCA"), and FDA's requirements relating to the marketing, promotion, and sale of pharmaceutical products which INDIVIOR markets, promotes, or sells. These policies and procedures will also address INDIVIOR's interactions with prescribers in relation to the Drug Addiction Treatment Act ("DATA 2000") and any relevant amendments thereto and reporting at-risk buprenorphine prescribers to the USAO and CPB and/or their designee (collectively "Reportees"). Such policies and procedures include, but are not limited to, the following:

   1. INDIVIOR will utilize prescribing data it obtains in the ordinary course of business and develop risk identification models using data analytics tools tied in part to historical oral buprenorphine prescribing risk factors to identify prescribers who may be engaged in non-legitimate buprenorphine prescribing practices.

   2. INDIVIOR will maintain policies and processes that require customer-facing employees to report field observations of prescriber activity ("prescriber concern reports") that (a) appears to violate requirements of DATA 2000 and any relevant amendments thereto; and (b) otherwise indicates through objective factors potential violation of the Controlled Substances Act. INDIVIOR will further maintain and implement policies and procedures for its consideration of such reports in connection with its risk identification and related delisting processes.

   3. INDIVIOR will "delist" prescribers from "INDIVIOR Programs" according to policies and procedures it will maintain and implement for utilizing risk identification and for addressing customer-facing employee prescriber concern reports to inform the prescriber delisting process. In addition, any prescriber will be delisted who INDIVIOR has actual knowledge: (1) is

above that health care provider's legally permitted patient limit for more than four consecutive months; (2) has been convicted of a felony controlled substance and/or health care fraud offense; (3) has, at any time, had his/her license to practice revoked or suspended in relation to a controlled substance and/or health care fraud offense; (4) has, at any time, surrendered his/her license to practice in relation to a controlled substance and/or health care fraud offense; (5) has been excluded by the United States Department of Health and Human Services from participation in federal health care programs; and/or (6) does not have a United States Drug Enforcement Administration ("DEA") registration or had his/her DEA registration revoked or suspended.

4. INDIVIOR will provide the identity of prescribers delisted from INDIVIOR Programs, every 60 (sixty) days and will quarterly provide all of the documentation supporting its delisting decision to the Reportees, excluding internal deliberations.

5. INDIVIOR will suspend prescribers from INDIVIOR Programs pending resolution of prescriber concern reports filed by employees. INDIVIOR will train employees other than those involved in only manufacturing, research and development, and the supply chain on prescriber concern reports policies and procedures; it will make compliance with such reporting an element in evaluations and compensation; and it will institute appropriate discipline for knowing violation of these policies and procedures.

B. The compensation (including, but not limited to, salaries, bonuses, contests, stock options, etc.) of INDIVIOR's United States sales representatives (or "Clinical Specialists") and their supervisors (or "Area Sales Managers" and "National Sales Directors") will be designed so that financial incentives do not inappropriately motivate such individuals to engage in or tolerate marketing, promoting, or selling of pharmaceutical products (1) for unapproved uses, (2) at dosages above maximum recommended doses listed in the package insert, (3) to prescribers who are not DATA 2000-certified (if applicable to the pharmaceutical product), and (4) to delisted prescribers.

C. INDIVIOR will implement and maintain policies and procedures designed to ensure that INDIVIOR's consultant or other fee-for-service arrangements entered into with health care providers or health care institutions (including, but not limited to speaker programs, speaker training programs, presentations, advisory boards, and any other financial consultant or financial engagement or arrangement with a health care provider or health care institution and all events and expenses relating to such

engagements or arrangements) will be used for only lawful purposes in accordance with applicable Federal health care program and FDA requirements.

D. INDIVIOR will ensure that any materials and information that it distributes or makes available in the United States through social media and/or direct-to-consumer advertising for its pharmaceutical products comply with applicable Federal health care and FDA laws and regulations, and have been approved by the applicable review committee(s) of INDIVIOR before they are posted or disseminated. INDIVIOR will ensure all of INDIVIOR's activities on United States-based third-party websites, social media, or other media accounts, comply with applicable Federal health care and FDA laws and regulations, and have been approved by the applicable review committee(s) of INDIVIOR before they are posted or disseminated.

E. INDIVIOR's Continuing Medical Education ("CME") grant-making decisions will be approved by persons without responsibility for sales and marketing, and financial support will be provided only to programs that foster increased understanding of scientific, clinical, or healthcare issues. INDIVIOR will only provide educational grant support to third-party CME providers who maintain full responsibility for, and control over, the selection of content, faculty, educational methods, materials, and venue for CME programs.

F. INDIVIOR's medical information letters will be accurate, evidence-based and contain fair balance. INDIVIOR will not solicit requests for information about company products for indications that are not approved or in a manner that falls outside the recommendations of the FDA in the Prescribing Information.

G. INDIVIOR will maintain standards, policies and practices regarding full, fair, and accurate reporting and transparency in clinical research sponsored and executed by INDIVIOR in the following ways:

   1. Clinical research sponsored and executed by INDIVIOR will be approved by INDIVIOR's medical and/or scientific organization. Scientific research and any resulting publications will foster increased understanding of scientific, clinical, or healthcare issues. INDIVIOR will not approve scientific research purely for the purpose of developing an article or reprint for sales personnel use.

   2. All clinical trial investigators must disclose INDIVIOR's support for their research and financial relationships between them and INDIVIOR (including any interest in any INDIVIOR product) in any publications or presentations related to research sponsored by INDIVIOR.

3. INDIVIOR will select and identify authors of journal articles about INDIVIOR-sponsored research based on International Committee of Medical Journal Editors ("ICMJE") requirements regarding authorship except when a journal requires an alternative procedure. INDIVIOR will require that a person can be considered an "author" only if he or she has made substantial contributions to the conception and design of the study, acquisition or analysis of data, and has final approval of the version to be published.

4. INDIVIOR will register summary results from all applicable clinical research sponsored and executed by INDIVIOR of INDIVIOR prescription pharmaceutical products, and report results of such clinical trials when available to INDIVIOR on the National Institutes of Health sponsored website (www.clinicaltrials.gov) in compliance with federal requirements.

5. INDIVIOR will require acknowledgement in all related scientific publications of its role as the funding source of all research and clinical trials sponsored and executed by INDIVIOR. INDIVIOR will establish and maintain policies and procedures that are designed to ensure that specific details about clinical research to be sponsored and executed by INDIVIOR and scientific publications to be funded by INDIVIOR (including a description of the proposed work to be done, type of work product to be generated, and the purpose of the work) are documented. Any deviations from the publications plan will also be documented and will be subject to review and approval by INDIVIOR's U.S. Compliance Administration Council.

6. INDIVIOR will properly report adverse event data to the FDA. INDIVIOR will maintain policies and procedures designed to ensure that all periodic reports to the FDA contain all required information and data regarding clinical research sponsored and executed by the company. INDIVIOR will require investigators participating in clinical research sponsored and executed by the company to report study-related information and data, including data about adverse events before receiving final payment from INDIVIOR.

H. Recognizing the risks of misuse, INDIVIOR will not use survey information from surveys of health care providers to make promotional claims about its products.

I. INDIVIOR will not use clinical decision support modules or alerts, or similar items, in electronic health record systems for any marketing, sales, or promotional purpose.

J. INDIVIOR will not hire a third party for the purpose of engaging in any activity that INDIVIOR may not engage in under the terms of this Addendum.

*Addendum A to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*

<u>**Compliance Measures and Certifications**</u>

K. INDIVIOR will maintain policies and procedures that address the company's commitment to full compliance with all federal health care program and FDA requirements.

L. INDIVIOR will maintain a compliance training program for U.S. company employees, officers, directors and contingent workers ("Company Personnel"). INDIVIOR shall maintain a policy requiring Code of Conduct and compliance training for U.S. Company Personnel upon hire or contracting, as well as ongoing training regular and ad hoc training, and shall provide compliance training to health care providers who are consultants as may be appropriate for the contracted services.

M. INDIVIOR will maintain policies and procedures that require Company Personnel performance evaluations to consider the Company Personnel's adherence to company's Code of Conduct and compliance policies and procedures and completion of Code of Conduct and compliance training.

Case 1:19-cr-00016-JPJ-PMS   Document 427-1   Filed 07/27/20   Page 6 of 9   Pageid#: 4285

*Addendum A to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*                                                                                                                                                              **Compliance Measures and Certifications**

## II. CERTIFICATIONS AND REPORTING TO DOJ

In addition to any commitment to provide any certifications and reports to other government agencies or entities, INDIVIOR shall provide the following reports and certifications to the Reportees and the Court for any period included with the Term of the Agreement.

### A. Annual INDIVIOR CEO's Certification

Within 60 (sixty) days of the end of INDIVIOR's fiscal year, its Chief Executive Officer will execute, under penalty of perjury, and provide to the Reportees and the Court a (1) certification that, to the best of the CEO's knowledge, after a reasonable inquiry, INDIVIOR was in compliance with the FDCA and implementing regulations governing the manufacture, marketing, sale, promotion, and distribution of Indivior products in the United States, and Title 18, United States Code, Section 1347 (Health Care Fraud) in the preceding year (or, in the instance of the first such certification, the period from execution of the Resolution Agreement through the end of INDIVIOR's fiscal year), or (2) certified list of all non-compliant activity and the steps taken by INDIVIOR to remedy such non-compliant activity. Any listing of non-compliant activity shall not be considered by the government or the Court as a per se violation of the terms of the Resolution Agreement. Instead, other factors will be taken into account, including, but not limited to, whether the conduct violated policies INDIVIOR has adopted, whether INDIVIOR provided training addressing the subject matter of the reported conduct, whether it was an isolated or systemic occurrence, INDIVIOR's response, and any remedial actions taken after INDIVIOR learned of the conduct reported.

### B. Annual Board of Directors Resolution

Within 60 (sixty) days of the end of INDIVIOR's fiscal year, INDIVIOR's Board of Directors ("Board") or a designated Committee of the Board of Directors ("Board Committee") shall conduct a review of the effectiveness of INDIVIOR's COMPLIANCE MEASURES described herein. This review shall consist of updates and reports by INDIVIOR's Chief Executive Officer, Chief Integrity and Compliance Officer, Chief Medical Officer, and/or a representative from INDIVIOR's Compliance Committee about INDIVIOR's U.S. Compliance Program and the effectiveness of that program during the preceding twelve-month period. Based on the review described above, INDIVIOR's Board shall submit to the Reportees and Court a resolution adopted by the Board stating, to the best of its knowledge, INDIVIOR has had in effect policies and procedures designed to ensure INDIVIOR fully complied with all federal laws and regulations pursuant to the FDCA and Title 18, United States Code, Section 1347 (Health Care Fraud) in the preceding year (or, in the instance of the first such certification, the period from execution of the Resolution Agreement through the end of INDIVIOR's fiscal year). The Board's resolution

*Exhibit A (Addendum A) to Plea Agreement*                                                                                                                 *Authorized Corporate Officer's Initials:* ___
*United States v. Indivior Solutions, Inc.*

Page 6 of 9

shall summarize the review described above that it, or the Board Committee, conducted to provide the required statement. If the Board determines there are deficiencies, it will provide a resolution which sets forth the deficiencies and the changes made to correct them.

### C. Reportable Events

30 (thirty) days after the end of each calendar quarter (that is, by January 30 for the calendar quarter ending December 31, April 30 for the calendar quarter ending March 31, July 30 for the calendar quarter ending June 30, and October 30 for the calendar quarter ending September 30) and ten (10) days prior to the termination of the Term ("Final Report"), INDIVIOR shall submit a report to the Reportees stating whether any Reportable Events have been determined (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) to have occurred during the preceding calendar quarter (or, in the case of the Final Report, during the period since the calendar quarter last covered by a regular quarterly report) and providing updated information about Reportable Events that occurred during any prior calendar quarters. A Reportable Event is any matter that a reasonable person would consider a probable violation of (a) any term of this Addendum; (b) the FDCA; or (c) Title 18, United States Code, Section 1347 (Health Care Fraud). A Reportable Event may be the result of an isolated event or a series of occurrences. Any Reportable Event determined (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) to have occurred by INDIVIOR shall be promptly reported to INDIVIOR's Chief Executive Officer.

### D. Timing of Reports

All annual certifications and reports shall be submitted within 60 (sixty) days of the end of INDIVIOR's fiscal year. The first year's report shall cover the period of time commencing from the date INDIVIOR SOLUTIONS pleads guilty through the end of the fiscal year. Each succeeding report shall cover the entire fiscal year and shall continue throughout the Term of the Agreement.

### E. Definitions

For the purpose of this Addendum, the following terms shall have the following meanings:

1. The term "INDIVIOR" refers to Indivior Inc. and Indivior plc, and any entity affiliated in any way to either or both of those entities.

2. The term "Chief Integrity and Compliance Officer" refers to the person at INDIVIOR with ultimate responsibility for developing and implementing policies, procedures, and practices designed to ensure compliance with the

*Addendum A to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*

**Compliance Measures and Certifications**

FDCA and FDA's regulations and guidance documents relating to the applicable REMS program for INDIVIOR's pharmaceutical products. During the term of this Addendum, the Chief Integrity and Compliance Officer shall be a member of INDIVIOR's senior management and INDIVIOR's Compliance Committee. Not more than 30 (thirty) days from the imposition of sentence of Indivior Solutions, INDIVIOR shall notify the Reportees in writing of the name of INDIVIOR's Chief Integrity and Compliance Officer and provide a written description of that person's responsibilities with respect to complying with the FDCA and FDA's regulations and guidance documents. INDIVIOR shall, in writing, report to the Reportees any changes in the identity of or any material changes in the position and responsibilities of the Chief Integrity and Compliance Officer. This report shall be provided within 15 (fifteen) days after such a change.

3. The term "delist" is defined as removal from INDIVIOR Programs.

4. The term "INDIVIOR Programs" means Sales platforms, Sales call target lists, Treatment Advocate ("TA") speaker programs and events, consulting services, advisory boards (for both Commercial and Medical Affairs), clinical research, and physician locator, related to any of its pharmaceutical products. This does not include a prescriber's ability to contact the Medical Information Unit ("MIU") and Risk Evaluation and Mitigation Strategies ("REMS") programs.

5. The term "Compliance Committee" refers to the committee established or to be established by INDIVIOR to, in conjunction with the Chief Integrity and Compliance Officer, assist in the implementation and enhancement of the Compliance Program's policies and procedures relating to compliance with (1) the FDCA and FDA's regulations and guidance documents and (2) the terms of this Addendum. During the term of this Addendum, this committee shall, at a minimum, include INDIVIOR's Chief Integrity and Compliance Officer and other members of INDIVIOR's senior management with responsibilities concerning compliance with the FDCA. Not more than 30 (thirty) days from the imposition of sentence in this matter, INDIVIOR shall notify the Reportees in writing of the names of INDIVIOR's senior managers on the Compliance Committee and provide a written description of their responsibilities with respect to complying with the FDCA and FDA's regulations and guidance. INDIVIOR shall, in writing, report to the Reportees any changes in the identity of or any material changes in the position and responsibilities of these senior managers. This report shall be provided within 15 (fifteen) days after such a change.

*Addendum A to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*

<u>**Compliance Measures and Certifications**</u>

6. The term "Compliance Program" refers to the policies, procedures, practices, and other measures INDIVIOR has established or will establish to address U.S. regulatory compliance issues, including INDIVIOR's compliance with FDCA and FDA regulations and guidance documents.

7. The term "pharmaceutical products" means drugs marketed, promoted, or sold in the United States and intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or drugs intended to affect the structure or any function of the body of humans. 21 U.S.C. § 321(g)(1)(B) & (C).