# SETTLEMENT AGREEMENT

## I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services, the Defense Health Agency, acting on behalf of the TRICARE Program; the Office of Personnel Management, which administers the Federal Employees Health Benefits Program (FEHBP); the Office of Workers Compensation Programs of the United States Department of Labor (DOL-OWCP); and the United States Department of Veteran Affairs (collectively, the "United States"); Indivior plc and Indivior Inc. (collectively, "Indivior"), and Stefan Kruszewski, The Stuart J. Finkelstein Trust, by and through its Trustee, Robert A. Finkelstein, Ann Marie Williams, Gail Scott, Christina Lemons, Mitchel Greene (collectively, "Relators") (hereafter, the United States, Indivior and Relators are collectively referred to as "the Parties"), through their authorized representatives.

## II. RECITALS

A. Indivior Inc. (formerly known as Reckitt Benckiser Pharmaceuticals Inc.) is a Delaware corporation headquartered in Richmond, Virginia, and is a wholly owned subsidiary of Indivior plc. At all relevant times, Indivior distributed, marketed, and sold pharmaceutical products in the United States, including a drug sold under the trade names Suboxone Sublingual Tablet ("Suboxone Tablet") and Suboxone Sublingual Film ("Suboxone Film"). Suboxone contains a combination of buprenorphine (an opioid) and naloxone (an opioid antagonist) and was approved to suppress opioid withdrawal symptoms as part of a complete treatment plan to include counseling and psychosocial support.

B. The following *qui tam* actions have been filed against Indivior pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Actions"):



- *United States ex rel. Kruszewski v. Reckitt Benckiser Pharms., Inc.*, No. (D.N.J.) **(UNDER SEAL)**
- *United States ex rel. Finkelstein v. Reckitt Benckiser Pharms., Inc.* (W.D. Va.)
- *United States ex rel. Williams v. Reckitt Benckiser, Inc.* (W.D. Va.)
- *United States ex rel. Scott v. Reckitt Benckiser Pharms.* (D.N.J.) **(UNDER SEAL)**
- *United States ex rel. Lemons v. Reckitt Benckiser Pharms.* (W.D. Va.)
- *United States ex rel. Greene v. Indivior PLC* (D.N.J.) **(UNDER SEAL)**

The United States partially intervened in the Civil Actions pending in the Western District of Virginia on August 1, 2018. The United States will partially intervene in the Civil Actions pending in the District of New Jersey on or after the execution of this Agreement.

C. The United States contends that Indivior submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE"); the FEHBP, 5 U.S.C. §§ 8901-8914; and the following DOL-OWCP programs: the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA") and the Energy Employees Occupational Illness Compensation Program Act, 42 U.S.C. § 7384 *et seq.* ("EEOICPA"); and caused purchases by the Veterans Health Administration, 38 U.S.C. Chapter 17 (collectively, the "Federal Healthcare Programs").

D. On, April 9, 2019, an Indictment was returned against Indivior in the Western District of Virginia, captioned, *United States v. Indivior, Inc. and Indivior plc*, No. 1:19-cr-00016-JRJ (the "Criminal Action"). On August 14, 2019, a Superseding Indictment was returned against Indivior in the Criminal Action (the "Superseding Indictment"). Contemporaneous with this Agreement, Indivior has entered or will enter into a separate Resolution Agreement in the Criminal Action (the "Criminal Resolution Agreement").

According to the Criminal Resolution Agreement, if the Court accepts the Criminal Resolution Agreement and Indivior complies with its terms, the United States will dismiss the Superseding Indictment.

E. Indivior has entered or will be entering into separate settlement agreements, described in Paragraph III.1 below (the "Medicaid State Settlement Agreements") with certain states and the District of Columbia in settlement of the Covered Conduct, defined below. States with which Indivior executes a Medicaid State Settlement Agreement in the form to which Indivior and the National Association of Medicaid Fraud Control Units ("NAMFCU") have agreed, or in a form otherwise agreed to by Indivior and an individual State, shall be defined as "Medicaid Participating States."

F. The United States contends that it and the Medicaid Participating States have certain civil claims against Indivior, as specified in Paragraph III.2 below, for engaging in the following conduct between January 1, 2010 and December 31, 2015:

(a) The United States contends that Indivior knowingly promoted the sale and use of Suboxone to physicians who were writing prescriptions that were not for a medically accepted indication. The prescriptions lacked a legitimate medical purpose, were issued without any counseling or psychosocial support, were for uses that were unsafe, ineffective, and medically unnecessary, and were often diverted.

(b) The United States contends that Indivior knowingly promoted the sale or use of Suboxone Film using false and misleading claims that Suboxone Film was less subject to diversion and abuse than other buprenorphine products and that Suboxone Film was less susceptible to accidental pediatric exposure than Suboxone Tablets. Physicians relied on these false and misleading claims in prescribing Suboxone Film, and state Medicaid agencies relied on these false and misleading claims to their detriment in making formulary and prior authorization decisions.

(c) The United States contends that Indivior knowingly submitted a petition to the Food and Drug Administration on September 25, 2012, fraudulently claiming that Suboxone Tablet had been discontinued "due to safety concerns" about the tablet formulation of the drug and took other steps to fraudulently delay the entry of generic competition for Suboxone in order to improperly control pricing of Suboxone, including pricing to federal healthcare programs.

As a result of the foregoing conduct, the United States alleges that Indivior knowingly caused false and/or fraudulent claims for Suboxone to be submitted to, or caused purchases by, the Federal Healthcare Programs. The conduct set forth in this Paragraph II.F is referred to as the "Covered Conduct."

G. This Agreement is neither an admission of liability by Indivior nor a concession by the United States or Relators that their claims are not well founded. Except as provided in the Criminal Resolution Agreement, Indivior denies the allegations in Paragraph II.F and the Civil Actions.

H. Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs. Relators Scott and Lemons have also filed claims seeking relief under 31 U.S.C. § 3730(h).

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## III. TERMS AND CONDITIONS

1. Indivior shall pay to the United States and the Medicaid Participating States, collectively, the sum of Three Hundred Million Dollars ($300,000,000) (the "Settlement Amount"), of which $130,641,000 constitutes restitution, plus interest at the rate of 1.25 percent per annum from April 9, 2020 through the date of payment. The Settlement Amount shall constitute a debt immediately due and owing to the United States and the Medicaid Participating States on the Effective Date of this Agreement, as defined below. This debt shall be discharged by payments to the United States and the Medicaid Participating States, under the following terms and conditions:

      a. Prior to July 24, 2020, Indivior shall place the sum of Thirty-Six Million Dollars ($36,000,000) plus interest as set forth above (the "Initial Payment") into an escrow account that bears interest at the rate set forth above. Within three days of the Court accepting the Criminal Resolution, the Initial Payment plus all interest to that point shall be released to the United States and the Medicaid Participating States in accordance with the payment schedule attached hereto as Exhibit A ("Payment Schedule").

b. Indivior shall pay to the United States a total of $209,317,200 plus interest as set forth above (the "Federal Settlement Amount"), of which $91,745,789 constitutes restitution. The Federal Settlement Amount shall be paid by electronic funds transfer pursuant to written instructions from the United States in accordance with the Payment Schedule. The Settlement Amount may be prepaid, in whole or in part, without penalty or premium.

c. Indivior shall pay to the Medicaid Participating States a total of $90,682,800 (the "Medicaid State Settlement Amount") plus interest as set forth above, under the terms and conditions of the Medicaid State Settlement Agreements that Indivior will enter into with the Medicaid Participating States.

d. If the Court notifies the United States and Indivior that it does not accept the Criminal Resolution Agreement or that it will not dismiss the Superseding Indictment, this Agreement shall be null and void at the option of either Indivior or the United States. If either the United States or Indivior exercises this option, which option shall be exercised by notifying all Parties, through counsel, in writing within ten (10) business days of the Court's notification, the Parties will not object and this Agreement will be rescinded. If this Agreement is rescinded, Indivior will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims, actions or proceedings arising from the Covered Conduct that are brought by the United States or arising

from the Civil Actions that are brought by Relator(s) within 90 calendar days of rescission, except to the extent such defenses were available on the day on which the Civil Actions were filed.

2. Subject to the exceptions in Paragraph III.8 below (concerning reserved claims), and subject to Paragraph III.11 (concerning disclosure of assets), Paragraph III.20 (concerning default), and Paragraph III.21 (concerning bankruptcy) below, and upon the United States' receipt of the Federal Settlement Amount, the United States releases Indivior, together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them (collectively, the "Released Entities") from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties which the Civil Division of the Department of Justice has actual or present authority to assert and compromise pursuant to 28 C.F.R. Pt. 0, Subpart I, 0.45(d); or any common law theories, including payment by mistake, unjust enrichment, fraud, nuisance, or negligent entrustment.

3. Subject to the exceptions set forth in this Paragraph III.3, among other exceptions set forth in this Agreement, including without limitation: Paragraph III.8 below (concerning reserved claims), and subject to Paragraph III.11 (concerning disclosure of assets), Paragraph III.20 (concerning default), Paragraph III.21 (concerning bankruptcy) below, and conditioned upon Indivior's full payment of the Settlement Amount and applicable interest, Relators for themselves and for their heirs, successors, attorneys, agents, and assigns, release the Released Entities from any civil monetary claim the Relators have on behalf of the United States under the

False Claims Act, 31 U.S.C. §§ 3729-3733. Each Relator represents and warrants that he or she and his or her counsel are the exclusive owner of the rights, claims, and causes of action herein released and none of them have previously assigned, reassigned, or transferred or purported to assign, reassign or transfer, through bankruptcy or by any other means, any or any portion of any claim, demand, action, cause of action, or other right released or discharged under this Agreement except between themselves and their counsel. Claims asserted by Relators on behalf of Medicaid Participating States shall be released under the terms and conditions of the Medicaid State Settlement Agreements that Indivior will enter into with the Medicaid Participating States. This Paragraph III.3 does not release any claims Relators may have: (a) for reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d) and/or analogous laws of the Medicaid Participating States; (b) under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7, *et seq.*, the Illinois Insurance Claims Frauds Prevention Act, 740 Ill. Comp. Stat. § 92, *et seq.*, the City of Chicago False Claims Act, Municipal Code of Chicago § 1-22-010, *et seq.*, and/or the New York City False Claims Act, New York City Administrative Code § 7801, *et seq.*, including, but not limited to, claims for reasonable attorneys' fees, costs and expenses; and (c) under 31 U.S.C. § 3730(h), including, but not limited to, claims for reasonable attorneys' fees, costs and expenses (collectively, the "Relators' Unreleased Claims").

4. In consideration of the obligations of Indivior in this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS and Indivior, and conditioned upon Indivior's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Indivior under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other

prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph III.8 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Indivior from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

5. In consideration of the obligations of Indivior set forth in this Agreement, and conditioned upon Indivior's full payment of the Settlement Amount, DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Indivior under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph III.8 (concerning excluded claims), below. DHA expressly reserves authority to exclude Indivior from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct. Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

6. In consideration of the obligations of Indivior in this Agreement, and conditioned upon Indivior's full payment of the Settlement Amount, OPM agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the FEHBP against Indivior under 5 U.S.C. § 8902a or 5 C.F.R. Part 890 Subpart J or Part 919 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph III.8 (concerning excluded claims), below, and except if excluded by the OIG-HHS pursuant to 42 U.S.C. § 1320a-7(a). OPM expressly reserves all rights to comply with any statutory obligation to debar

JR

Indivior from the FEHBP under 5 U.S.C. § 8902a(b) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes OPM from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

7. In consideration of the obligations of Indivior in this Agreement, and conditioned upon Indivior's full payment of the Settlement Amount, DOL-OWCP agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the FECA and EEOICPA programs against Indivior under 20 C.F.R. §§ 10.815 and 30.715 for the Covered Conduct, except as reserved in Paragraph III.8 (concerning excluded claims), below, and except if excluded by the OIG-HHS pursuant to 42 U.S.C. § 1320a 7(a). Nothing in this Paragraph precludes the DOL-OWCP from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph III.8, below.

8. Notwithstanding the releases given in Paragraphs III.2 through III.7 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Except as explicitly stated in this agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f. Any liability of individuals;

JR

g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h. Any liability for failure to deliver goods or services due;

i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

j. Any liability for the claims or conduct alleged in the operative complaints provided by the United States to counsel for Indivior in connection with the negotiation of this Agreement in the following *qui tam* actions, and no setoff related to amounts paid under this Agreement shall be applied to any recovery in connection with either of these actions:

*(i) United States ex rel. Miller v. Reckitt Benckiser Group PLC*, Case No. 1:15-cv-00017-JPJ-PMS (W.D. Va.); and

*(ii)* *Sealed v. Sealed*, Case No. X:XX-cv-XXXX (S.D.N.Y.).

9. Indivior agrees that the Settlement Amount and this Agreement are fair, adequate, and reasonable pursuant to 31 U.S.C. § 3730(c)(2)(B) and agrees to take reasonable and necessary steps to defend this Agreement.

10. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Agreement and the Civil Actions, Relators and their heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Actions, nor any dismissal of the Civil Actions, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(b)(5), (d)(3) and (e), bar Relators from sharing in the proceeds of this Agreement.

Moreover, the United States and Relators and their heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that a Relator should receive of the Settlement Amount, and that no agreements between the United States and Relators concerning Relator share have been reached to date.

11. Indivior has provided sworn financial disclosure statements ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Indivior warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Indivior had an interest of any kind at the time of this Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Indivior's obligations under this Agreement) that were not disclosed in the Financial Statements, or if the United States learns of any false statement or misrepresentation by Indivior on, or in connection with, the Financial Statements, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Statements by $15,000,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit or file suit based on the Covered Conduct, or (b) let this Agreement stand and collect the full Settlement Amount in accordance with the Agreement, plus one hundred percent (100%) of the value of the net worth of Indivior's previously undisclosed assets. Indivior agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees it will immediately pay the United States all the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States, pursuant to this Paragraph rescinds this Agreement, Indivior waives and agrees not to plead, argue, or otherwise

*Attachment 1 to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*
*Civil Settlement Agreement*

raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States or Relators within 120 calendar days of written notification to Indivior that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement.

12.     Indivior waives and shall not assert any defenses Indivior may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13.     Indivior fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Indivior has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.     Indivior fully and finally releases Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Indivior has asserted, could have asserted, or may assert in the future against Relators, related to the Covered Conduct and Relators' investigation and prosecution thereof. Indivior reserves all rights and defenses with respect to Relators' Unreleased Claims, including requests for expenses, attorneys' fees and costs, in their respective cases.

15.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Federal Healthcare Program or any state

12

*Exhibit A (Attachment 1) to Plea Agreement*
*United States v. Indivior Solutions, Inc.*

payer, related to the Covered Conduct; and Indivior agrees not to resubmit to any Federal Healthcare Program or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

16. Indivior agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Indivior, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement and the Criminal Resolution;

(2) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3) Indivior's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement and the Criminal Resolution;

(5) the payment Indivior makes to the United States pursuant to this Agreement and any payments that Indivior may make to Relator, including costs and attorneys' fees; and

(6) the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as

described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and FEHBP (hereinafter referred to as Unallowable Costs). However, nothing in Paragraph III.16(a)(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Indivior.

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Indivior, and Indivior shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Indivior or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Indivior further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Indivior or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Indivior agrees that the United States, at a minimum, shall be entitled to recoup from Indivior any overpayment plus applicable interest and penalties as a result of the

inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Indivior or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Indivior or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Indivior's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17. Indivior agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Indivior shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Indivior further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

18. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph III.19 (waiver for beneficiaries paragraph), below.

19. Indivior agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

20. The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due to Indivior's financial condition as reflected in the Financial Statements referenced in Paragraph III.11.

a. In the event that Indivior fails to pay the Federal Settlement Amount as provided in the payment schedule set forth in Paragraph III.1 above, Indivior shall be in Default of Indivior's payment obligations ("Default"). The United States will provide a written Notice of Default, and Indivior shall have an opportunity to cure such Default within seven (7) business days from the date of receipt of the Notice of Default by making the payment due under the Payment Schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to Indivior, or to such other representative as Indivior shall designate in advance in writing. If Indivior fails to cure the Default within seven (7) business days of receiving the Notice of Default, and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b. In the event of Uncured Default, Indivior agrees that the United States, at its sole discretion, may (i) declare this Agreement breached and proceed against Indivior for any claims, including those to be released by this Agreement; (ii) take any action to enforce this Agreement



in a new action or by reinstating the Civil Actions; (iii) offset the remaining unpaid balance from any amounts due and owing to Indivior and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. At its sole option, the United States may retain any payments previously made, rescind this Agreement and pursue the Civil Actions or bring any civil and/or administrative claim, action, or proceeding against Indivior for the claims that would otherwise be covered by the releases provided in Paragraphs III.2 through III.7 above, with any recovery reduced by the amount of any payments previously made by Indivior to the United States under this Agreement. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Indivior agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this Paragraph, Indivior waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Indivior within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement. Indivior agrees not to contest any offset, recoupment, and /or collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

c. In the event of Uncured Default, OIG-HHS may exclude Indivior from participating in all Federal health care programs until Indivior pays the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to Indivior. Indivior waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, Indivior wishes to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001.3005. Indivior will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

21. In exchange for valuable consideration provided in this Agreement, Indivior acknowledges the following:

a. Indivior has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount.

b. In evaluating whether to execute this Agreement, the Parties (a) intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Indivior, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do, in fact, constitute a reasonably equivalent exchange of value.

9R

d. The Parties do not intend to hinder, delay, or defraud any entity to which Indivior was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e. If Indivior's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, or if, before the Settlement Amount is paid in full, Indivior or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (i) seeking to have any order for relief of Indivior's debts, or to adjudicate Indivior as bankrupt or insolvent; or (ii) seeking appointment of a receiver, trustee, custodian, or other similar official for Indivior or for all or any substantial part of Indivior's assets: (a) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Indivior for the claims that would otherwise be covered by the releases provided in Paragraphs III.2 through III.7, above; (b) the Relators may rescind the releases in this Agreement and bring any civil claim, action, or proceeding against Indivior for the claims pleaded in the Civil Actions that would otherwise be covered by the release provided in Paragraph III.3 above; and (c) the United States has an undisputed, noncontingent, and liquidated claim against Indivior in the amount of $600,000,000, less any payments received pursuant to this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Indivior, a receiver, trustee or custodian, or similar official for Indivior. If any payments are avoided and recovered from the United States by Indivior, a receiver, trustee, custodian, or similar official for Indivior, Relator shall, within thirty days of written notice from the United States to the undersigned Relator's counsel, return any portions of such avoided and recovered payment(s) already paid by the United States to Relator.



f. Indivior agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph III.21(e) is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Indivior shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Indivior waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Indivior that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement.

22. Upon receipt of the Initial Payment from the escrow account described in Paragraph III.1(a), above, the Parties shall promptly sign and file in the Civil Actions a Joint Stipulation of Dismissal of the Civil Actions pursuant to Rule 41(a)(1) that is consistent with and subject to the terms and conditions of this Agreement.

23. Other than Relators' rights, if any, to seek reasonable attorneys' fees, expenses and costs pursuant to their Unreleased Claims, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

25. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Virginia. For purposes of construing this Agreement, this

Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

26. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

27. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29. This Agreement is binding on Indivior's successors, transferees, heirs, and assigns.

30. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

31. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: BY: ______________________________
DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: BY: ______________________________
CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: BY: ______________________________
EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

**THE UNITED STATES OF AMERICA**

DATED: 7/22/20 BY: ______________________
DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: __________ BY: ______________________
CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: __________ BY: ______________________
EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

**THE UNITED STATES OF AMERICA**

DATED: __________ BY: ______________________________
DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: 7/22/2020 BY: ______________________________
CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: __________ BY: ______________________________
EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

**THE UNITED STATES OF AMERICA**

DATED: __________ BY: ______________________________
DANIEL P. BUBAR
First Assistant United States Attorney
Western District of Virginia
Attorney for the United States, Acting Under Authority
Conferred by 28 U.S.C. § 515

DATED: __________ BY: ______________________________
CRAIG CARPENITO
United States Attorney
District of New Jersey

DATED: 6/24/20 BY: [signature]
EDWARD C. CROOKE
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: BY: ____________________________
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: BY: ____________________________
SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

DATED: BY: ____________________________
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management

DATED: BY: ____________________________
PAUL ST. HILLAIRE
Assistant Inspector General
for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management

DATED: BY: ____________________________
JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

DATED: 07/23/2020 BY: [signature]
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: __________ BY: ______________________________
SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

DATED: __________ BY: ______________________________
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management

DATED: BY: ______________________________
PAUL ST. HILLAIRE
Assistant Inspector General
for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management

DATED: __________ BY: ______________________________
JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

DATED: __________ BY: ______________________________
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: 7/22/2020 BY: ______________________________
for
SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

DATED: __________ BY: ______________________________
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management

DATED: BY: ______________________________
PAUL ST. HILLAIRE
Assistant Inspector General
for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management

DATED: __________ BY: ______________________________
JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

DATED: ________ BY: ______________________

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: ________ BY: ______________________

SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

DATED: 7/22/2020 BY: ______________________

EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management

DATED: BY: ______________________

PAUL ST. HILLAIRE
Assistant Inspector General
for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management

DATED: ________ BY: ______________________

JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

DATED: __________ BY: ______________________________
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: __________ BY: ______________________________
SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

DATED: __________ BY: ______________________________
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management

DATED: 7-22-2020 BY: ______________________________
PAUL ST. HILLAIRE
Assistant Inspector General
for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management

DATED: __________ BY: ______________________________
JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

DATED: __________ BY: ______________________________
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: __________ BY: ______________________________
SALVATORE M. MAIDA
General Counsel
Defense Health Agency
United States Department of Defense

DATED: __________ BY: ______________________________
EDWARD M. DEHARDE
Assistant Director of Federal Employee
Insurance Operations
Healthcare and Insurance
United States Office of Personnel Management

DATED: BY: ______________________________
PAUL ST. HILLAIRE
Assistant Inspector General
for Legal & Legislative Affairs
Office of the Inspector General
United States Office of Personnel Management

DATED: 07/22/2020 BY: Jennifer Valdivieso
JENNIFER VALDIVIESO
Deputy Director of Program and System Integrity
Division of Federal Employees' Compensation
Office of Workers' Compensation Programs
United States Department of Labor

**INDIVIOR PLC & INDIVIOR, INC.**

DATED: 7/24/20 BY: ______________________
JAVIER RODRIGUEZ
Chief Legal Officer
Indivior, Inc.

DATED: 7-24-20 BY: ______________________
GEJAA GOBENA
Counsel for Indivior PLC & Indivior, Inc.

DATED: 7/24/20 BY: ______________________
THOMAS BEIMERS
Counsel for Indivior PLC & Indivior, Inc.

DATED: 7-24-20 BY: ______________________
VIRGINIA A. GIBSON
Counsel for Indivior PLC & Indivior, Inc.

**RELATOR STEFAN KRUSZEWSKI**

DATED: BY: ______________________________
STEFAN KRUSZEWSKI
Relator

DATED: BY: ______________________________
BRIAN KENNEY
Counsel for Relator Stefan Kruszewski

**RELATOR STEFAN KRUSZEWSKI**

DATED: 7/22/2020 BY: ____________________
STEFAN KRUSZEWSKI
Relator

DATED: 7/22/2020 BY: ____________________
BRIAN KENNEY
Counsel for Relator Stefan Kruszewski

**RELATOR THE STUART J. FINKELSTEIN TRUST,**
**BY AND THROUGH ITS TRUSTEE ROBERT A. FINKELSTEIN**

DATED: BY: ______________________________
ROBERT A. FINKELSTEIN
Trustee for Relator

DATED: BY: ______________________________
WILLIAM K. HANAGAMI
Counsel for Relator The Stuart J Finkelstein Trust

**RELATOR THE STUART J. FINKELSTEIN TRUST,**
**BY AND THROUGH ITS TRUSTEE ROBERT A. FINKELSTEIN**

DATED: July 22, 2020 BY: ______________________
ROBERT A. FINKELSTEIN
Trustee for Relator

DATED: July 22, 2020 BY: ______________________
WILLIAM K. HANAGAMI
Counsel for Relator The Stuart J Finkelstein Trust

**RELATOR ANN MARIE WILLIAMS**

DATED: BY: ______________________
ANN MARIE WILLIAMS
Relator

DATED: BY: ______________________
KENNETH YOFFY
Counsel for Relator Ann Marie Williams

**RELATOR ANN MARIE WILLIAMS**

DATED: 7/22/2020 BY: ______________________
ANN MARIE WILLIAMS
Relator

DATED: 7/22/2020 BY: ______________________
KENNETH YOFFY
Counsel for Relator Ann Marie Williams

**RELATOR GAIL SCOTT**

DATED: BY: ______________________________
GAIL SCOTT
Relator

DATED: BY: ______________________________
W. SCOTT SIMMER
Counsel for Relator Gail Scott

*Attachment 1 to Resolution Agreement*
*United States v. Indivior Inc. and Indivior plc*
*Civil Settlement Agreement*

**RELATOR GAIL SCOTT**

DATED: 7/22/2020 BY: ______________________
GAIL SCOTT
Relator

DATED: 7/22/2020 BY: ______________________
W. SCOTT SIMMER
Counsel for Relator Gail Scott

28

*Exhibit A (Attachment 1) to Plea Agreement*
*United States v. Indivior Solutions, Inc.*

**RELATOR CHRISTINA LEMONS**

DATED: BY: ____________________________
CHRISTINA LEMONS
Relator

DATED: BY: ____________________________
JOHN LEADER
Counsel for Relator Christina Lemons

**RELATOR CHRISTINA LEMONS**

DATED: 7/22/20 BY: ______________________
CHRISTINA LEMONS
Relator

DATED: 7/22/20 BY: ______________________
JOHN LEADER
Counsel for Relator Christina Lemons

**RELATOR MITCHEL GREENE**

DATED: BY: ______________________________
MITCHEL GREENE
Relator

DATED: BY: ______________________________
JOSEPH GENTILE
Counsel for Relator Mitchel Greene

**RELATOR MITCHEL GREENE**

DATED: 7-22-2020 BY: [signature]
MITCHEL GREENE
Relator

DATED: 7/22/20 BY: [signature]
JOSEPH GENTILE
Counsel for Relator Mitchel Greene

**EXHIBIT A**
**PAYMENT SCHEDULE**

**Full Settlement Amount**

| | Principal | Interest | Payment |
|---|---|---|---|
| Initial Payment | $36,000,000.00 | TBD* | TBD |
| 1/15/2022 | $25,000,000.00 | $4,945,479.46 | $29,945,479.46 |
| 1/15/2023 | $25,000,000.00 | $2,987,500.00 | $27,987,500.00 |
| 1/15/2024 | $25,000,000.00 | $2,675,000.00 | $27,675,000.00 |
| 1/15/2025 | $25,000,000.00 | $2,368,972.60 | $27,368,972.60 |
| 1/15/2026 | $25,000,000.00 | $2,050,000.00 | $27,050,000.00 |
| 1/15/2027 | $25,000,000.00 | $1,737,500.00 | $26,737,500.00 |
| 12/15/2027 | $114,000,000.00 | $1,303,972.60 | $115,303,972.60 |

**Federal Settlement Amount**

| | Federal Principal | Federal Interest | Federal Payment |
|---|---|---|---|
| Initial Payment | $25,118,064.00 | TBD* | TBD |
| 1/15/2022 | $17,443,100.00 | $3,450,579.71 | $20,893,679.71 |
| 1/15/2023 | $17,443,100.00 | $2,084,450.45 | $19,527,550.45 |
| 1/15/2024 | $17,443,100.00 | $1,866,411.70 | $19,309,511.70 |
| 1/15/2025 | $17,443,100.00 | $1,652,889.04 | $19,095,989.04 |
| 1/15/2026 | $17,443,100.00 | $1,430,334.20 | $18,873,434.20 |
| 1/15/2027 | $17,443,100.00 | $1,212,295.45 | $18,655,395.45 |
| 12/15/2027 | $79,540,536.00 | $909,812.98 | $80,450,348.98 |

**State Medicaid Settlement Amount**

| | State Principal | State Interest | State Payment |
|---|---|---|---|
| Initial Payment | $10,881,936.00 | TBD* | TBD |
| 1/15/2022 | $7,556,900.00 | $1,494,899.75 | $9,051,799.75 |
| 1/15/2023 | $7,556,900.00 | $903,049.55 | $8,459,949.55 |
| 1/15/2024 | $7,556,900.00 | $808,588.30 | $8,365,488.30 |
| 1/15/2025 | $7,556,900.00 | $716,083.56 | $8,272,983.56 |
| 1/15/2026 | $7,556,900.00 | $619,665.80 | $8,176,565.80 |
| 1/15/2027 | $7,556,900.00 | $525,204.55 | $8,082,104.55 |
| 12/15/2027 | $34,459,464.00 | $394,159.62 | $34,853,623.62 |

* Interest on the Initial Payment shall be paid in accordance with Paragraph III.1.